David T. Blake, Esq. (#11059)
WOLFE & WYMAN LLP
6757 Spencer Street
Las Vegas, NV 89119
Tel: (702) 476-0100
Fax: (702) 476-0101
dtblake@ww.law

Attorneys for Defendant
CITIMORTGAGE, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TWINROCK HOLDINGS, LLC, a Utah Limited Liability Company,<br><br>    Plaintiff,<br><br>  v.<br><br>CITIMORTGAGE, INC., a New York Corporation; NATIONAL DEFAULT SERVICING CORPORATION, a foreign corporation; DOES I through X, inclusive; and ROE ENTITIES XI through XX,<br><br>    Defendants. | CASE NO.:   2:22-cv-00143-JAD-VCF<br><br>**DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS** |

## I.

### Introduction

This case is part of a growing body of second-generation HOA foreclosure lawsuits. CitiMortgage, inc. ("CitiMortgage") previously litigated and prevailed in a quiet title action against the Plaintiff, Twinrock Holdings's ("Twinrock's") successor in interest. Twinrock now seeks to further burden Nevada dockets with additional meritless post-HOA foreclosure litigation. Although Twinrock purchased the property located at 7313 Hospitality Place, Las Vegas, Nevada 89131, APN 125-16-416-030 (the "Property") with constructive (and likely actual) knowledge of CitiMortgage's interest in the Property, it now pretends to be an innocent purchaser. Twinrock's complaint alleges that (1) CitiMortgage's interest in a deed of trust owned by the Federal Home Loan Mortgage

1   Corporation ("Freddie Mac") expired under NRS 106.240 and (2) that Twinrock is a bona fide

2   purchaser. As argued below, Twinrock's Complaint should be dismissed because Twinrock's quiet

3   title theories are meritless or have been rejected by multiple courts.

4     ***First***, NRS 106.240 does not extinguish CitiMortgage's interest in the deed of trust owned by

5   Freddie Mac. Although the debt underlying the deed of trust was accelerated pursuant to a notice of

6   breach and election to sell recorded on October 27, 2010, CitiMortgage rescinded the acceleration.

7   Under settled Nevada law, the rescission cancelled the original acceleration, and the first notice of

8   default no longer triggers NRS 106.240.

9     ***Second,*** the borrowers' bankruptcy discharge did not start the 10-year period in NRS

10   106.240. Twinrock's contention on this point relies on an interpretation of a case by the Washington

11   Court of Appeals. That court recently explicitly rejected Twinrock's arguments in reversing a trial

12   court decision, stating, "[t]his was error. . . . No Washington Supreme Court case has established

13   such a rule. It is not the law in Washington. The federal cases, which are the source of that

14   interpretation . . . [and on which Twinrock relies] are in error." *See Copper Creek (Marysville)*

15   *Homeowners Ass'n v. Kurtz*, 2022 WL 152492, at *7 (Wash. Ct. App. Jan. 18, 2022).

16     ***Third***, Twinrock's contention that it is a bona fide purchaser ignores relevant Nevada statutes

17   and case law. Under clear Nevada authority, a lis pendens provides notice to all purchasers that a

18   property title is subject to the outcome of the lawsuit identified in the lis pendens. NRS 14.010;

19   *Weddell v. H2O, Inc.*, 128 Nev. 94, 106, 271 P.3d 743, 751 (2012). A purchaser who purchases a

20   property subject to a valid lis pendens is bound by the outcome of the lawsuit, including any appeal

21   thereof. *See Freedom Mortg. Corp. v. Kent*, No. 219CV01411APGDJA, 2020 WL 5096995, at *4

22   (D. Nev. Aug. 28, 2020); *Top Rail Ranch Ests., LLC v. Walker*, 2014 COA 9, ¶ 76, 327 P.3d 321,

23   334. Twinrock purchased subject to a recorded lis pendens. It had constructive notice that title to the

24   Property was in dispute. As a result, Twinrock is not a bona fide purchaser.

25     Because Twinrock's quiet title claim is meritless, it must be dismissed. Similarly, the request

26   for imposition of a permanent injunction is wholly dependent and reliant on the quiet title claim. It

27   must also be dismissed.

28

4161640.2

## II.

### Background

**A.  Property and Litigation History**

The Nevada Court of Appeals affirmed that Freddie Mac has a valid and enforceable first priority deed of trust (the "First DoT") encumbering the Property. *See CitiMortgage, Inc. v. Premier One Holdings, Inc.*, 461 P.3d 904 (Nev. App. 2020). A copy of the First DoT is attached hereto as Exhibit A. Prior to that holding, CitiMortgage, as Fredie Mac's Servicer, was involved in HOA foreclosure litigation with Twinrock's predecessor-in-interest, Premier One Holdings, Inc. ("Premier One"). Premier One purchased the property at an HOA foreclosure sale on or around November 19, 2012. (*See* Dkt. 1-1 (the "Complaint") at ¶ 19.) Premier One then sued CitiMortgage on January 20, 2013, seeking to quiet title on the theory that the HOA foreclosure sale extinguished Freddie Mac's first position Deed of Trust. Premier One prevailed in its claim to remove the First DoT after a bench trial in Nevada's Eight Judicial District Court. CitiMortage appealed and prevailed on appeal. The quiet title lawsuit concerning this Property is hereinafter referred to as the "First Lawsuit." Premier One transferred the Property to Golden Creek Holdings on or around September 6, 2018. (Complaint ¶ 22.)

During the First Lawsuit, CitiMortgage recorded a lis pendens (the "Lis Pendens") on the Property on May 31, 2017. *See* Lis Pendens, attached hereto as Exhibit B. The Lis Pendens notified all prospective purchasers of the Property that the outcome of First Lawsuit could affect title to or possession of the Property. While the First Lawsuit was proceeding on appeal no party sought to expunge the Lis Pendens. CitiMortgage did not release the Lis Pendens until May 28, 2020, which was after the Nevada Supreme Court vacated the District Court's original judgment and confirmed that the First DoT still encumbered the Property. *See* Release of Lis Pendens, attached hereto as Exhibit C. Plaintiff Twinrock purchased the Property prior on November 15, 2018, prior to the release of the Lis Pendens. Twinrock never sought to cancel or expunge the Lis Pendens at any point during its ownership of the Property.[1]

---

[1] Twinrock's argument that "there was nothing recorded in the office of the Clark County Recorder that would suggest that Plaintiff was acquiring the title subject to any other encumbrances,"

3

**B.     Foreclosure Notices and the Borrower's Bankruptcy**

The First DoT became at risk of foreclosure when the original borrowers fell behind in their payments sometime in August of 2009. (Complaint ¶ 9.) The borrowers filed a Chapter 7 Bankruptcy (Case no. 10-14965-mkn) and indicated their intent to surrender the Property on March 24, 2010. (Complaint ¶ 11.) The borrowers' personal obligation to pay the loan was discharged on or around July 6, 2010. Cal-Western Reconveyance Corporation, the trustee at the time, recorded a Notice of Breach and Default and Election to Cause Sale of Real Property Under Deed of Trust (the "First NoD") on October 27, 2010. (Complaint ¶ 14.) This First NoD stated that the debt under the First DoT had been accelerated. (Complaint ¶ 14.) On or around December 16, 2010, MERS, as nominee for the lender and lender's successors and assigns, recorded an assignment of the Deed of Trust to CitiMortgage, in its capacity as servicer for Freddie Mac. (Complaint ¶ 15.) As noted above, CitiMortgage recorded the Lis Pendens on May 31, 2017, the Nevada Supreme Court ruled that the First DoT remained an encumbrance on the Property on April 28, 2020 (Complaint ¶ 27), and CitiMortgage released the Lis Pendens on May 28, 2020. CitiMortgage also recorded a Notice of Rescission of Notice of Breach and Default and Election to Sell to Cause Sale of Real Property Under Deed of Trust (the "NoD Rescission") on October 22, 2020. *See* NoD Rescission, attached hereto as Exhibit D. CitiMortgage recorded the NoD Rescission less than 10 years after the First NoD was recorded. The NoD Rescission decelerated the loan, consistent with Nevada law authorizing such deceleration, as discussed below. CitiMortgage then commenced foreclosure proceedings anew by recording a Notice of Default and Election to Sell Under Deed of Trust (the "Second NoD") on September 9, 2021.

With one notable exception, each of the foregoing facts are admitted in the Complaint. The only fact not admitted to in the Complaint is the recoding and release of the Lis Pendens, which is conveniently omitted from the Complaint. Nevertheless, the Court can take judicial notice of the Lis Pendens without converting this Motion into one for summary judgment. *Lee v. City of Los Angeles,*

---

(Complaint at ¶ 26) is directly contradicted by the Lis Pendens, which placed Twinrock on constructive notice that there was an appeal of the trial court's decision ongoing at the time that Twinrock purchased.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

1    250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of "matters of public record"

2    without converting a motion to dismiss into a motion for summary judgment.").

3        As argued below, the foregoing admitted facts would not permit the Plaintiff to receive any

4    of the relief requested in the Complaint. Accordingly, the Complaint must be dismissed.

5                                                **III.**

6                                           **Legal Standard**

7        To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

8    as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 669

9    (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim is facially plausible

10   'when the pleaded factual content allows the court to draw the reasonable inference that the

11   defendant is liable for the misconduct alleged.'" *McKenna v. WhisperText*, No. 5:14-CV-00424-

12   PSG, 2015 WL 5264750, at *2 (N.D. Cal. Sept. 9, 2015) (quoting *Iqbal*, 556 U.S. at 663). A

13   complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal

14   theory or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*,

15   729 F.3d 953, 959 (9th Cir. 2013).

16       While a court must take as true all the factual allegations, the court is "not required to accept

17   as true legal conclusions couched as factual allegations." *Parents for Privacy v. Barr*, 949 F.3d

18   1210, 1221 (9th Cir. 2020). Documents whose contents are alleged in a complaint but which are not

19   physically attached to the pleading may be considered in ruling on a Rule 12(b)(6) motion to dismiss

20   without converting the motion to dismiss into a motion for summary judgment. *See, e.g., Hicks v.

21   PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018).

22       Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a party's pleading

23   "should [be] freely give[n] ... when justice so requires," because the purpose of the rule is "to

24   facilitate decision on the merits, rather than on the pleadings or technicalities." *Chudacoff v. Univ.

25   Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir.2011) (cleaned up). Nevertheless, the "general

26   rule that parties are allowed to amend their pleadings ... does not extend to cases in which any

27   amendment would be an exercise in futility or where the amended complaint would also be subject

28   to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998). Futility alone

                                                  5

1  can justify a court's refusal to grant leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th

2  Cir.1995).

3                                     **IV.**

4                                   **Argument**

5  **A.    NRS 106.240's Ten-Year Clock Was Never Triggered.**

6         NRS 106.240 provides:

7             The lien heretofore or hereafter created of any mortgage or deed of
              trust upon any real property, appearing of record, and not otherwise
8             satisfied and discharged of record, shall at the expiration of 10 years
              after the debt secured by the mortgage or deed of trust according to the
9             terms thereof or any recorded written extension thereof become wholly
              due, terminate, and it shall be conclusively presumed that the debt has
10            been regularly satisfied and the lien discharged.

11        The Nevada Supreme Court has held that "NRS 106.240 creates a conclusive presumption

12  that a lien on real property is extinguished ten years after the debt becomes due." *Pro-Max Corp. v.*

13  *Feenstra*, 117 Nev. 90, 94, 16 P.3d 1074, 1077 (2001). Twinrock contends that Borrower's last

14  payment was made in July 2009, that Freddie Mac's servicer (or its predecessor) "undoubtedly

15  accelerated the debt then secured by the Deed of Trust" and that such acceleration would have

16  necessarily rendered the Loan "wholly due" under NRS 106.240. (*See* Complaint ¶ 34.)  Twinrock

17  identifies two events that it suggests may have triggered the NRS 106.240 clock: correspondence

18  leading up to the recordation of a Notice of Default on October 27, 2010, see Dkt. 1-3, Ex. 5, and the

19  July 6, 2010 discharge of the note in a bankruptcy proceeding.  Twinrock is incorrect as a matter of

20  law. Courts have considered and rejected both arguments that Twinrock raises, and this Court should

21  follow suit, for the reasons discussed below.

22        **1.    Neither the Notice of Default Nor the Correspondence Leading Up To It
                  Triggered the Ten-Year Clock**
23

24        While neither the Nevada Legislature nor the Nevada Supreme Court has defined "wholly

25  due" as the term is used in NRS 106.240, the only plausible reading of "wholly due" is the maturity

26  date stated in the relevant deed of trust, or a recorded written extension of that date.[2]

27  _____

28  [2] Here, the definition of "Note" in the Deed of Trust states that "Borrower owes Lender [a certain
    sum] plus interest[,]" and "promised to pay this debt in regular Periodic Payments and *to pay the*
    *debt in full not later than April 01, 2036*," a date still far in the future as of this filing. *See* Ex. A.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

a.     **Under NRS 106.240, Only Two Kinds of Instruments Can Make a Loan "Wholly Due" and Trigger the Ten-Year Ancient-Lien Clock**

The express terms of NRS 106.240 make only two types of instruments relevant in determining when the obligation a lien secures becomes "wholly due" for purposes of triggering the statute's ten-year clock—(1) the recorded "deed of trust" itself, and (2) "any recorded extension thereof." *Id.*

The Nevada Legislature is obviously aware of notices of default, given its comprehensive regulation of their form and content, and the process by which they are issued and recorded. *See* NRS 107.080 (requiring a trustee to record a notice of default prior to initiating power of sale); NRS 107.087 (providing requirements for content, recording, and posting of notices of default). Had the Legislature intended notices of default, or related correspondence, to trigger NRS 106.240, it could have inserted a reference to such documents when enacting NRS 107.080 or 107.087, or even when amending 106.240. It did not.

"[T]he 'doctrine of expressio unius est exclusio alterius as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (citation omitted). "The maxim 'Expressio Unius Est Exclusio Alterius', the expression of one thing is the exclusion of another, has been repeatedly confirmed in [Nevada's jurisprudence]." *Galloway v. Truesdell*, 422 P.2d 237, 246 (Nev. 1967). NRS 106.240's references to "deeds of trust" and "recorded extensions" setting the date a loan becomes "wholly due" for purposes of triggering the ten-year clock thus precludes other documents, such as notices of default, from doing so.

b.     **NRS 106.240's Statutory History Confirms the Point**

Citi's reading comports with the statutory history of NRS 106.240.[3] NRS 106.240 has changed little since it was enacted in 1917. It was amended in 1965 to include additional documents

---

[3] "Statutory history" refers to the evolution of a statutory scheme as evidenced by its actual, *enacted* provisions, in contrast to "legislative history" which refers to *unenacted* material like floor statements and committee reports. *See, e.g., Chhetri v. United States*, 823 F.3d 577, 587 n.13 (11th Cir. 2016) (differentiating statutory history from legislative history).

1   (deeds of trust and recorded extensions) as potential triggers. Had the Legislature intended to add

2   notices of default or related correspondence to the list, it could easily have done so then or at some

3   time thereafter. Indeed, although the Legislature made sweeping changes to its foreclosure laws after

4   the 2008 housing crisis—particularly regarding the type and form of notice required to be given to

5   borrowers—NRS 106.240 remained untouched. The statute has for more than a century omitted any

6   mention of NRS 106.240. This history refutes any contention that the Nevada Legislature intended

7   for other documents, such as notices of default and related correspondence, to trigger NRS 106.240.

**c.   Twinrock's Arguments Cannot Be Squared with NRS 106.240's Plain Language**

8
9       Twinrock does not address the statutory history of NRS 106.240; instead, it assumes that *any*

10  acceleration triggers NRS 106.240's ten-year clock. *See, e.g.*, Compl. ¶ 34. That is not what the

11  statute says. Twinrock also ignores the fact that Nevada law makes recording the Notice of Default a

12  *precondition* to acceleration—NRS 107.080 mandates that acceleration cannot occur until 35 days

13  *after* the *recorded* notice of default is mailed to the borrower. *See* NRS 107.080(3)(a); *Glass v.*

14  *Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020)

15  (unpublished disposition). The Notice of Default cannot have recounted a previous acceleration, as

16  such acceleration would have been premature and therefore void under Nevada law.

17

**d.   The Notice of Default Could Not Make the Debt "Wholly Due" Because the Deed of Trust Contained a Reinstatement Clause**

18
19      Even if the Notice of Default could have accelerated the Loan, it still could not make the

20  Loan "wholly due" within the meaning of NRS 106.240, because the Borrower retained the right to

21  reinstate the Loan under the Deed of Trust by making a partial payment of the past-due amount. *See*

22  Ex A, § 22, ¶ 19.

23      An obligation that becomes fully due cannot be satisfied or altered by partial, rather than

24  complete, performance. *See generally Effect of Performance as Discharge and of Non-Performance*

25  *as Breach*, Restatement (Second) of Contracts § 235 (updated Oct. 2019). Thus, for a loan to become

26  "wholly due" as the term is commonly used, payment in full must be a borrower's only non-

27  breaching option. But here, even *after* the Letter was allegedly sent and the Notice of Default

28  recorded, the Borrowers retained the "right to reinstate after acceleration" by making a *partial*

8

payment. *See* Ex. A, § 22, ¶ 19. As a practical matter, the only time that all amounts owed are certain and therefore "wholly due" is at maturity, not following an acceleration. *See Annen v. Bank of Am.*, No. 1:16-cv-00641-SCJ-AJB, 2016 WL 11569314, at *4 (N.D. Ga. Nov. 25, 2016), *report and recommendation adopted*, 2016 WL 11569313 (N.D. Ga. Dec. 19, 2016).

### e. Even if the Notice of Default Triggered the 10-Year Clock, the Rescission Reset It.

Relying on *Pro-Max*, Twinrock contends that NRS 106.240 terminates the First DoT because the debt became "wholly due" when the First NoD accelerated the debt. However, Twinrock fails to recognize relevant precedent rejecting the application of NRS 106.240 where, as here, a notice of default is rescinded. *See Glass v. Select Portfolio Servicing, Inc.*, 466 P.3d 939, *1 (Nev. 2020).

The Ninth Circuit has repeatedly confirmed the principle that a recission of a notice of default decelerates a loan. *Bank of Am., NA v. SFR Invs. Pool 1, LLC* ("*BANA v. SFR*"), 849 F. App'x 211 (9th Cir. 2021) (unpublished); *TRP Fund VIII, LLC v. NewRez LLC*, No. 20-17129, 2021 WL 5823701 (9th Cir. Dec. 8, 2021); *Bank of Am., NA v. Summit Real Estate Group*, No. 20-16624, 2021 WL 5507377 (9th Cir. Nov. 24, 2021) (unpublished). For instance, in *BANA v. SFR*, Fannie Mae challenged a district court's ruling that NRS 106.240 extinguished its lien notwithstanding a recorded rescission of the notice of default. Fannie Mae's servicer had recorded a notice of default and election to sell under the deed of trust, which had the effect of declaring all sums secured by the deed of trust immediately due and payable and causing the property to be sold to satisfy the debt. Two years later, the servicer issued a rescission notice stating that the servicer rescinded, cancelled, and withdrew the notice of default. The Ninth Circuit reversed the district court and held that, under Nevada law, the "rescission notice decelerated the demand for full payment [and] the notice rendered NRS 106.240 inapplicable." *BANA v. SFR*, 849 F. App'x at 212–13.[4]

These Ninth Circuit decisions are bolstered by a Nevada Supreme Court decision, which on

---

[4] Numerous district court decisions are to the same effect. *See, e.g., Closson v. Bank of New York Mellon*, No. 2:20-cv-02229-APG-DJA, 2021 WL 3723154, at *2 (D. Nev. Aug. 20, 2021) ("a rescission of the notice of default was recorded. The rescission decelerated the same debt that was the subject of both the lender communications and the recorded notice of default. Consequently, the debt was no longer 'wholly due' under [NRS] 106.240, so the ten-year period to extinguish the lien has not run.").

similar facts held that a rescission notice "effectively cancel[s] the acceleration" and resets NRS

106.240's ten-year clock. *Glass v. Select Portfolio Servicing, Inc.*, 466 P.3d 939, *1 (Nev. 2020). In

*Glass*, the Nevada Supreme Court held that a rescission of a notice of default effectively cancels a

prior acceleration and restores the parties to the prior status they held before the notice of default

was filed. *Id. See also Holt v. Reg'l Tr. Servs. Corp.*, 266 P.3d 601, 606 (Nev. 2011) (holding that

"[a] notice of rescission renders moot disputes concerning the notice of default or its timing," and

thus "resets the right-to-cure and other time periods provided by law for the debtor's protection");

NRS 107.550(3) (Upon the recording of a rescission of a notice of default, the "beneficiary of the

deed of trust is thereupon restored to its former position and has the same rights as though … a

notice of default and election to sell had not been recorded."). The Nevada Supreme Court has

repeatedly rejected efforts to limit, narrow, or distinguish *Glass. See, e.g., Saticoy Bay LLC, Series

2920 Bayliner Ave. v. U.S. Bank Nat'l Ass'n as Tr. for NRZ Pass-Through Tr. X*, 498 P.3d 774 (Nev.

2021); *SFR Invs. Pool 1 v. U.S. Bank N.A.*, 495 P.3d 126 (Nev. 2021). Courts in this District

addressing the issue have unanimously followed *Glass* in recognizing that a rescinded notice of

default prevents a deed of trust from expiring under NRS 106.240. *See Valin v. Nationstar Mortg.,

LLC*, 2020 WL 4606662, at *3 (D. Nev. Aug. 11, 2020); *121 Sourcing & Supply LLC v. Bank of

New York Mellon*, 2021 WL 2383221, at *2 (D. Nev. June 9, 2021); *Florendo v. Bank of New York

Mellon*, 2021 WL 3708048, at *2 (D. Nev. Aug. 20, 2021). All Ninth Circuit decisions are also

consistent with this holding. *See, e.g., Bank of Am., NA v. SFR Invs. Pool 1, LLC*, 849 F. App'x 211,

212 (9th Cir. 2021).

The rescission in *Glass* stated that the lender "does hereby rescind, cancel and withdraw the

Notice of Default and Election to Sell." *Glass* 466 P.3d at *1. Here, the NoD Rescission states that

CitiMortgage:

> Does hereby rescind, cancel, withdraw and revoke without prejudice
> the acceleration of the Note, or Deed of Trust, or both . . . . This
> rescission . . . reinstates the obligations secured by the Deed of Trust
> as though the Notice of Breach and Default and Election to Cause Sale
> of Real Property under Deed of Trust listed above had not been
> previously recorded.

*See* Ex. D.

10

4161640.2

1    Those holdings apply with equal force here. As with the rescission in *Glass*, the Recission

2    here states that it is "only an election, without prejudice, not to cause a sale to be made." Dkt. 1-3,

3    Ex. 13; *see Glass*, 2020 WL 3604042, at *1. Borrower's failure to make their mortgage payments led

4    the servicer to record the Notice of Default. The Rescission stated that Citi "does hereby rescind,

5    cancel, withdraw, and revoke without prejudice the acceleration of the Note, or Deed of Trust, or

6    both, as referenced in the [Notice of Default] listed above.…" Dkt. 1-3, Ex. 13. Thus, the Recission

7    had the effect of "cancel[ling] the demand for full payment of the note," rendering NRS 106.240

8    inapplicable. *BANA v. SFR*, 849 F. App'x at 212. The Court should join the Nevada Supreme Court

9    in *Glass*, the Ninth Circuit, and other Courts in this District in rejecting Twinrock's contention

10   because the NoD Rescission contains nearly identical language to that in *Glass*. The NoD Rescission

11   is conclusive. The First DoT is not extinguished under NRS 106.240.

12   **2.      The borrowers' bankruptcy discharge did not trigger the NRS 106.240 clock.**

13   Twinrock also claims that the original borrowers' bankruptcy made the loan "wholly due"

14   and triggered NRS 106.240's 10-year period. (*See* Complaint at ¶¶ 38-40.) As Twinrock concedes,

15   NRS 106.240 applies only if a loan becomes wholly due "according to the terms" of the Deed of

16   Trust. *See* Compl. ¶ 16 (describing NRS 106.240). A bankruptcy discharge is effected according to

17   the terms of federal law, not the terms of the deed of trust. 11 U.S.C. § 524. As a result, even if a

18   bankruptcy discharge were assumed to make the obligation set forth in the deed of trust "wholly

19   due"—which, as explained above, it does not—it still could not trigger the NRS 106.240 clock.

20   Twinrock relies primarily on *Jarvis v. Fed. Nat'l Mortg. Ass'n*, 726 F. App'x 666, 666-667

21   (9th Cir. 2018) in support of its argument that the bankruptcy discharge started the 10-year period. In

22   *Jarvis*, the Ninth Circuit applying Washington law analyzed a prior Washington Court of Appeals

23   decision, *Edmundson v. Bank of America*, 194 Wash. App. 920, 320 P.3d 272 (2016). The *Jarvis*

24   court concluded that under Washington law, a borrower's bankruptcy discharge trigged the six-year

25   statute of limitations to foreclose on a deed of trust. 726 F. App'x at 667. Plaintiff's reliance on

26   *Jarvis* is misplaced for several reasons.

27   First, *Jarvis* applied a Washington statute of limitations to foreclose that is very different

28   from NRS 106.240. The statutory language is different, and the effect of the statutes is different. For

11

example, where Washington may impose a 6-year statute of limitations on a foreclosure, the Nevada

Supreme Court has held that a trustee sale is not subject to a statute of limitations because it is not a

judicial action. *See Facklam v. HSBC Bank USA for Deutsche ALT-A Sec. Mortg. Loan Tr.*, 133

Nev. 497, 500, 401 P.3d 1068, 1071 (2017) ("We conclude that NRS 11.190(1)(b) does not apply to

nonjudicial foreclosures because nonjudicial foreclosures are not judicial actions and NRS 11.190

applies only to judicial actions."). Thus, there is no reason to graft Washington's foreclosure statute

of limitations case law onto Nevada's body of foreclosure caselaw.

Second, since *Jarvis*, the Washington Court of Appeals has explicitly rejected *Jarvis's*

interpretation of Washington law. *Copper Creek (Marysville) Homeowners Ass'n v. Kurtz*, 2022 WL

152492, at *7 (Wash. Ct. App. Jan. 18, 2022). The Washington Court of Appeals noted that certain

federal courts were interpreting its *Edmundson* decision as announcing a new rule that a bankruptcy

discharge causes the statute of limitations governing foreclose to start running, but that *Edmundson*

did not create or announce such a rule. The Court specifically noted that *Jarvis* was the first court to

attribute a new rule rising out of *Edmundson. Id.* The Court of Appeals was explicit in its rejection of

*Jarvis's* analysis (which the trial court had relied on):

> This was error. *Edmondson* did not establish such a rule. No
> Washington Supreme Court case has established such a rule. It is not
> the law in Washington. **The federal cases, which are the source of
> that interpretation of *Edmundson*, are in error**. To the extent that
> unpublished state appellate cases have repeated the federal
> interpretation, they are also in error."

2022 WL 152492, at * 6 (emphasis added). Thus, the Washington Court of appeals has rejected

*Jarvis's* and Plaintiff's argument. This Court should do the same.

Third, Plaintiffs' application of *Jarvis* makes little sense in the context of NRS 106.240, even

without the benefit of the Washington Court of Appeals' rejection of *Jarvis*. Prior to *Copper Creek*,

District Court Judge Andrew Gordon considered and rejected an argument similar to that asserted by

Twinrock in its Complaint. This court should do the same for the same reasons expressed by Judge

Gordon. He noted:

> The Supreme Court of Nevada has not directly addressed what the
> statute means by the debt becoming "wholly due." But that court has
> suggested that it means when the debt is "due in full," which includes "
> 'the lender exercis[ing] his or her option to declare the entire note due.'
> " *First Am. Title Ins. Co. v. Coit*, No. 70860, 412 P.3d 1088, 2018 WL

1129810, at *1 n.1 (Nev. Feb. 26, 2018). "That would include not only the ultimate maturity date, but also a sooner date if the lender accelerates the debt and declares the entire debt due. The statute's plain language supports this interpretation." *Bank of Am., N.A. v. Estrella II Homeowners Ass'n*, No. 2:16-cv-02835-APG-DJA, 2020 WL 4194004, at *2 (D. Nev. July 21, 2020). "It is also consistent with Nevada law that recognizes a lender's ability to accelerate and decelerate debts." Id.

*4 For the debt to become wholly due within § 106.240's meaning, it must be "according to the terms thereof." In other words, the debt must be wholly due **by the terms of the original maturity date or because the lender has accelerated the debt according to the terms of the parties' agreement**. Consequently, although a bankruptcy petition accelerates debts for purposes of a bankruptcy proceeding, it does not necessarily do so for purposes of § 106.240. *See Greenhouse Patio Apartments v. Aetna Life Ins. Co.*, 868 F.2d 153, 156 (5th Cir. 1989) (stating that a creditor filing a proof of claim on unmatured amounts "does not cause acceleration"). Likewise, although the bankruptcy discharge relieved the debtors of personal liability on the debt, that happened by operation of the bankruptcy proceeding, not by the lender's option to accelerate under the terms of the note and deed of trust.

*See Ramanathan as Tr. of Ramanathan Fam. Tr. v. Bank of New York Mellon as Tr. for CWABS, Inc. Asset Backed Certificates, Series 2005-4*, No. 219CV02009, 2021 WL 4486320, at *3-4 (D. Nev. Sept. 30, 2021) (cleaned up) (emphasis added). Judge Gordon determined that the deed of trust did not contain any provision which provided for acceleration of the debt based on the borrower obtaining a discharge in bankruptcy.

As noted by Judge Gordon, NRS 106.240 requires the debt to become due "according to the terms thereof," i.e., according to the terms of the mortgage or deed of trust. The First DoT does not contain any language automatically accelerating the amount due if the borrower were to receive a bankruptcy discharge. Thus, the debt did not become wholly due pursuant to the First DoT. The final payment is not yet due, and CitiMortgage has rescinded its prior acceleration of the debt.

Accordingly, Twinrock's assertion that the deed of trust expired after the original borrowers' bankruptcy discharge is meritless. The 10-year period in NRS 106.240 begins to run only when the debt becomes "wholly due" pursuant to the terms of a deed of trust. The First DoT here does not accelerate the debt if the borrower receives a bankruptcy discharge. Therefore, the bankruptcy discharge did not accelerate the debtor trigger NRS 106.240's 10-year period.

4161640.2

### 3. The Bankruptcy Discharge Did Not Make the Loan "Wholly Due" Because It Left a Material Portion of the Debt Unpaid

In any event, Twinrock's contention that the bankruptcy discharge made the loan wholly due is not correct. By definition, the discharge of an obligation through a bankruptcy leaves a portion of the underlying obligation unpaid. It does not make the unpaid portion of the obligation "due"; it excuses the borrower's personal liability for it, in effect mandating that the unpaid portion will never be "due" unless the borrower affirms the debt after the discharge. An obligation cannot plausibly be deemed to have ever become "wholly due" when a portion will never become due.

Twinrock points the Court to an unpublished Ninth Circuit decision that Twinrock says holds that a "bankruptcy discharge has the effect of making the discharge date the actual maturity date of the debt." Compl. at 11 (citing *Jarvis v. Federal Nat'l Mortg. Ass'n*, 726 F. App'x. 666 (9th Cir. 2018) (unpublished)). Twinrock misreads the decision, which holds that because a bankruptcy discharge eliminated a borrower's liability for future installment payments, the last installment date before the discharge triggered Washington's statute of limitations for enforcing the obligation. The Ninth Circuit specifically cited a Washington decision holding that "the statute of limitations runs against each installment from the time it becomes due," and reasoned that because no payments were due after the discharge, the limitations period ran from the prior installment's due date. *Jarvis*, 726 F. App'x at 666–67. The decision says nothing about the debt becoming "wholly due" or the discharge date becoming "the actual maturity date," as Twinrock mistakenly contends. *See* Compl. at 11.

Nor does the district court decision in the case support Twinrock. *See id.* It is true that the district court states that a bankruptcy "discharge of a borrower's personal liability on his loan—the cessation of his installment obligations—is the analog to a note's maturation" for statute-of-limitations purposes. *Jarvis v. Federal Nat'l Mortg. Ass'n*, No. 16-cv-5194, 2017 WL 1438040, at *3 (W.D. Wash. April 24, 2017). But that is because "[i]n both cases, no more payments could become due," not because the loan has been accelerated or payment of the outstanding balance has otherwise become due. *Id.* Indeed, contrary to Twinrock's argument, the district court recognized that a bankruptcy discharge does *not itself* authorize "the creditor to require [the borrower] to pay in

14

full immediately." *Id.*

The law and common sense are in accord. A bankruptcy discharge excuses the borrower from paying but leaves an obligation partially unmet; it does not make the obligation "wholly due."

**B.      Twinrock is not a bona fide purchaser because the Lis Pendens placed Twinrock on notice that the result of the First Lawsuit could affect its title to the Property.**

Plaintiff also seeks to quiet title in its favor because it claims to be a bona fide purchaser ("BFP"). (Complaint ¶ 41-45.) A BFP is a person or entity who purchases an interest in real estate and:

1.   purchases in good faith;

2.   pays valuable consideration; and

3.   does not have actual, constructive, or reasonable cause to know that there is a defect or superior adverse interest in the property.

*See* NRS 111.180. *See also Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 132 Nev. 49, 64 (2016). A purchaser is on notice if he or she has knowledge of facts sufficient to put an ordinarily prudent person on inquiry and a reasonably diligent inquiry would lead to the discovery of the title or sale defects. *See U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 135 Nev. 199, 207 (2019).

The doctrine of lis pendens provides constructive notice to the world that a dispute involving real property is ongoing. *Weddell v. H2O, Inc.*, 128 Nev. 94, 106, 271 P.3d 743, 751 (2012); NRS 14.010. Where a lis pendens is recorded, it remains effective in providing constructive notice until a final judgment not subject to appeal or until the lis pendens is withdrawn or cancelled. *See In re Hatfield*, No. 08-30154 TEC, 2009 WL 2905847, at *2 (Bankr. N.D. Cal. Sept. 3, 2009) (citing 5 Miller & Starr §§ 11:137 at 355; 11:142 at 372.). A party that purchases property subject to a lis pendens acquires title is bound by the outcome of the action. *See Taddeo v. Am. Invsco Realty*, No. 2:08-CV-01463-KJD, 2011 WL 4007402, at *1 (D. Nev. Sept. 8, 2011); *Freedom Mortg. Corp. v. Kent*, No. 219CV01411APGDJA, 2020 WL 5096995, at *4 (D. Nev. Aug. 28, 2020). A lis pendens is provides notice of an action through any time during which the case is on appeal. *See Top Rail Ranch Ests., LLC v. Walker*, 2014 COA 9, ¶ 76, 327 P.3d 321, 334; *Zuni Indian Tribe v. McKinley Cty. Bd. of Cty. Comm'rs*, 2013-NMCA-041, ¶ 22, 300 P.3d 133, 139; *Petroleum Realty II, LLC v.*

1  *Morris, Manning & Martin, LLP*, 317 Ga. App. 102, 105, 728 S.E.2d 896, 898 (2012). *See also*

2  *Wilkin v. Shell Oil Co.*, 197 F.2d 42, 50 (10th Cir. 1951).

3       Here, this settled law directly contradicts Twinrock's assertion that it is a BFP. Twinrock

4  had, at a minimum, constructive notice of CitiMortage's claim to have a priority deed of trust

5  because Twinrock purchased the Property before CitiMortgage released the Lis Pendens.

6  CitiMortgage recorded the Lis Pendens on May 31, 2017. Twinrock purchased on November 15,

7  2018. CitiMortgage released the Lis Pendens May 28, 2020, after the Nevada Court of Appeals

8  resolved the First Lawsuit in CitiMortage's favor. Accordingly, pursuant to NRS 14.010, Twinrock

9  was on notice that its purchase of the Property was subject to the outcome of the First Lawsuit.

10  Twinrock is now bound by the result of the appeal.

11       Twinrock contends that it is a BFP because CitiMortgage did not obtain a stay of the

12  November 15, 2018 judgment pending appeal. (*See* Complaint at ¶¶ 43-45 ("it was absolutely fatal

13  for CITI to fail to seek a stay of the district court's order/judgment . . .")). Twinrock confuses its

14  constructive notice of the action with enforcement of the original Judgment. A stay of a judgment

15  pending appeal prevents a party from enforcing a judgment. *See* NRCP 62(a)(1). However, a

16  judgment can be reversed even where a party fails to stay enforcement of that judgment. The above-

17  cited authorities make clear, a lis pendens remains effective throughout the appeal and provides all

18  prospective purchasers with notice that the property is subject to the outcome of the appeal.

19  Twinrock provides no authority for the proposition that it did not have notice of First Lawsuit simply

20  because the judgment was not stayed.

21       Twinrock does cite to two cases holding that the sale of real property at an execution sale is

22  final as to a BFP where the judgment was later reversed, including *Cox v. Eighth Jud. Dist. Ct. of*

23  *State*, 124 Nev. 918, 923, 193 P.3d 530, 533 (2008) and *Spahi v. Hughes–Northwest, Inc.*, 107

24  Wash.App. 763, 27 P.3d 1233, 1236 (2001). These cases are not relevant here because they involved

25  a bona fide purchaser at a judicial or execution sale. They do not hold that a lis pendens fails to

26  provide constructive notice to a purchaser. And here, Twinrock did not purchase at a judicial or

27  execution sale. Additionally, Twinrock purchased despite the validly recorded Lis Pendens. Neither

28  of Twinrock's cases mentioned a lis pendens and one presumably was not recorded. *See Cox*, 124

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

Nev. at 534; *Spahi*, 107 Wash.App at 770-771. Finally, in the First Lawsuit, CitiMortage was not seeking damages or an order compelling the sale of the Property to satisfy a judgment. CitiMortage was simply seeking recognition that its First DoT retained first position priority against subsequent purchasers. Twinrock could have looked up the case and the appeal and determined that if CitiMortgage prevailed on appeal, Twinrock's interest in the Property would be affected.

Accordingly, these cases do not support Twinrock's contention that the Lis Pendens was not effective to place Twinrock on notice of the Frist Lawsuit. No party sought to expunge the Lis Pendens. As a result, Twinrock is bound by the outcome of the appeal and cannot be deemed a BFP. The Court must dismiss Twinrock claim for quiet title because Twinrock was not a BFP.

**C.      The result of the First Lawsuit negates Twinrock's claim.**

Even if the NRS 106.240 clock had been somehow triggered and not reset, the long-running state-court quiet-title litigation to determine the Deed of Trust's validity paused it.

**1.      Plaintiff seeks an absurd result.**

Tolling the ten-year period during the pendency of the state-court litigation would comport with NRS 106.240's purpose:  to clear abandoned and forgotten liens from the record, thereby making title marketable without the need for quiet-title litigation. As one federal court explained, ancient-lien statutes "have the obvious purpose of clearing titles of old and obsolete mortgages." *LBM Fin. LLC v. Shamus Holdings, Inc.*, No. CIV. 09-11668-FDS, 2010 WL 4181137, at *4 (D. Mass. Sept. 28, 2010) (cleaned up). It would make no sense to apply NRS 106.240 here, as the lien was obviously not abandoned or forgotten.

Terminating a lien under NRS 106.240 where that lien's validity was recently litigated between the lienholder and the titleholder's predecessor in interest for over seven years of the ten-year period would violate the canon against interpreting statutes to require absurd results. No one could reasonably believe the lien had been simply left to lie fallow, and invalidating it as "old and obsolete" or abandoned and forgotten would make a mockery of judgment confirming its validity. As the U.S. Supreme Court has explained, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are

4161640.2

available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982).[5]  Under the circumstances, Twinrock cannot plausibly claim to believe that Citi abandoned the lien or lacks the intent to enforce it. Nor could anyone else checking the land records reasonably infer that Citi did not intend to protect and enforce the lien. Accordingly, this Court should hold that NRS 106.240 did not extinguish the Deed of Trust because the statutory clock was tolled during the pendency of the state-court litigation over the Deed of Trust's validity.

**2.     The statute that includes NRS 106.240 requires tolling upon notice of pending litigation**

The statute that includes NRS 106.240 expressly addresses notices of pending litigation, such as the lis pendens filed here, and its text and structure confirm NRS 106.240's inapplicability. The legislation providing for NRS 106.240 was captioned "An Act to quiet title to real estate by defining when the lien of an attachment and mortgage *and the notice of the pendency of an action* expires." *See* Stat. of Nev. (1917) at 41 (emphasis added).[6]  The section that directly follows NRS 106.240 states that "Notice of the pendency of any action"—including publicly recorded lis pendens—"shall not constitute notice or be of any force or effect *after the expiration of ten years from the time of the filing of such notice.*" *See* Stat. of Nev. (1917) at 41 (emphasis added). That provision remains in effect today. *See* NRS 108.260.

A lis pendens confirms that a live dispute exists where "the title to [a] property is disputed." *LaSalle Bank N.A. v. Hammer Family 1994 Trust*, 131 Nev. 1310, 2015 WL 1423421 at *1 (Nev. 2015) (unpublished). Thus, a lis pendens "cloud[s] title *before* a sale of property occurs *so that the claims of a party may be resolved ….*" *Coury v. Tran*, 895 P.2d 650, 653 (Nev. 1995) (emphasis changed). By placing the pending-litigation provision *after* NRS 106.240, the Legislature manifested its intent that the pending-litigation provision would act as an *exception* to NRS 106.240, *i.e.*, that serving a quiet-title complaint or recording a lis pendens in relation to a mortgage preserves the

---

[5]     The Nevada Supreme Court concurs: "When interpreting a statute, this court resolves any doubt as to legislative intent in favor of what is reasonable, and against what is unreasonable. … A statute should be construed in light of the policy and the spirit of the law, and the interpretation should avoid absurd results." *Hunt v. Warden*, 903 P.2d 826, 827 (Nev. 1995).

[6]     "The title of a statute may be considered in determining legislative intent." *Coast Hotels & Casinos, Inc. v. Nevada State Labor Comm'n*, 34 P.3d 546, 551 (Nev. 2001).

mortgage until either the matter is resolved or the ten-year period for doing so expires, whichever is later. Holding otherwise could place the two provisions in conflict in situations like those here, as a lis pendens relating to a mortgage could not have any continuing "force or effect" if the underlying mortgage were terminated mid-litigation.

"When two statutory provisions conflict," Nevada law compels courts to "harmonize conflicting provisions so that the act as a whole is given effect." *State v. Eighth Jud. Dist. Ct. (Logan D.)*, 306 P.3d 369, 380 (Nev. 2013) (citations omitted). Read together, the full statute provides that mortgages ordinarily terminate ten years after the debt becomes "wholly due," except that notices of pending litigation regarding the mortgage forestall that outcome while they remain valid and effective, until ten years after their issuance. Thus, the lis pendens filed here automatically tolled NRS 106.240's 10-year clock.

### 3. Equitable Considerations Require Tolling NRS 106.240's Ten-Year Period During Litigation Concerning the Lien's Validity

In any event, because no one could reasonably have doubted Citi's intention to enforce the deed of trust once the prior quiet-title action concluded, given the positions Citi took during that litigation, the NRS 106.240 period was equitably tolled throughout that case.

NRS 106.240's application is not automatic and can be precluded by equitable considerations. In *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074 (Nev. 2001), the Nevada Supreme Court found that, while the ten-year period under NRS 106.240 had unquestionably passed, the statute did not automatically terminate the lien. *See id.* at 1079. Instead, the court remanded the case for further proceedings on whether an equitable consideration—there, estoppel—precluded that result. *Id.* Had equitable considerations been off limits, there would have been no basis for remand. *Feenstra* is consistent with a long line of decisions holding that Nevada courts retain the power to fashion equitable remedies in cases involving real property. *See, e.g.*, *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1111 (Nev. 2016). *Feenstra*, *Shadow Wood*, and cases like them confirm that equitable considerations can trump NRS 106.240's application. The Court should find that they do so here.

4161640.2

1    Here, the equities clearly favor Citi, which diligently litigated its rights and successfully

2    defeated a prolonged quiet-title challenge brought by Twinrock. Tolling the ten-year period is also

3    equitable to the public at large, as it would advance the public interest in clear and reliable land

4    records. The land records relating to the Property contain the HOA-issued Notice of Default and

5    Election to Sell Under Notice of Delinquent Assessment Lien, Dkt. 1-3, Ex. 3, the Order

6    Discharging Debtors, Dkt. 1-3, Ex. 4, the Notice of Default, Dkt. 1-3 Ex. 5, the Rescission, Dkt. 1-3,

7    Ex. 13, the HOA-recorded Notice of Foreclosure Sale, Dkt. 1-3, Ex. 7, the assignment of the Deed of

8    Trust to Citi, Dkt. 1-3, Ex. 6], the Trustee's Deed Upon Sale, Dkt. 1-3, Ex. 8, a notice of Default and

9    Election to Sell Under Deed of Trust Dkt. 1-3, Ex. 14, and a Notice of Trustee's Sale Dkt. 1-3, Ex.

10   15. No one could plausibly infer from those records that the lien had been satisfied, abandoned, or

11   forgotten. Holding that the ten-year period under NRS 106.240 continues to run under these

12   circumstances would introduce confusion and uncertainty, not clarity.

13   Indeed, adopting Twinrock's position would undermine years of work by this Court, the

14   Ninth Circuit, Nevada courts, and other federal courts in resolving the substantial volume of

15   litigation regarding the effect of HOA foreclosures on Enterprise lien interests. *E.g.*, *Berezovsky v.*

16   *Moniz*, 869 F.3d 923 (9th Cir. 2017); *Daisy Tr. v. Wells Fargo Bank, N.A.*, 445 P.3d 846 (2019).

17   Those decisions confirm that the Federal Foreclosure Bar preserves liens that Nevada HOA

18   foreclosures could otherwise extinguish, and the clarity the decisions provide has streamlined and

19   reduced burdensome litigation in Nevada courts. Allowing NRS 106.240 to terminate the Deed of

20   Trust here would usher in a wave of new litigation—a wave that already appears to be forming

21   around ancient lien arguments—seeking to effectively re-litigate and erase those results. The public

22   interest favors resolving title disputes efficiently, not creating incentives for parties like Twinrock to

23   prolong them.

24   Finally, Twinrock argues that equitable tolling is unavailable because NRS 106.240 is a

25   statute of repose, but that argument is incorrect on the merits. The Nevada Supreme Court's decision

26   in *Feenstra* demonstrates that equitable considerations can preclude application of NRS 106.240 in

27   appropriate circumstances. *Feenstra* comports with other states' equitable exceptions to statutes of

28   repose; federal courts recognize and apply such exceptions routinely. *See, e.g.*, *McCullough v. World*

4161640.2

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1     *Wrestling Ent., Inc.*, 172 F. Supp. 3d 528, 551–55 (D. Conn. 2016) (tolling statute of repose under

2     "continuing course of conduct" doctrine).

3          Accordingly, if the Court holds that NRS 106.240 applies here, it should fashion an equitable

4     remedy to preclude application of the statute.

5     **D.**     **Twinrock's request that a permanent injunction be imposed must also be dismissed because it is wholly reliant on and depends upon the meritless quiet title claim.**

6

7          Twinrock's second Claim for Relief is for a preliminary and permanent injunction.

8     (Complaint ¶¶ 48-56.) This claim is dependent upon the validity of Twinrock's quiet title claim for

9     relief. (*See* Complaint ¶¶ 49-51.) As discussed above, Twinrock's quiet title claim is meritless and

10     must be dismissed. The dependent claim for a permanent injunction must also be dismissed.

11                        **V.**

                       **Conclusion**

12

13          Twinrock's complaint does not allege facts that would entitle it to the relief requested. The

14     First DoT was not extinguished by NRS 106.240. The various authorities that Twinrock relies on for

15     this claim have been rejected by the Nevada Supreme Court and the Washington Court of Appeals.

16     Twinrock is not a BFP because the Lis Pendens, which had not been released when Twinrock

17     purchased the Property, placed Twinrock on constructive notice of the appeal, which ultimately

18     resolved in favor of CitiMortgage. The Court should dismiss Twinrock's Complaint.

19

20     DATED:  February 4, 2022               WOLFE & WYMAN LLP

21

22                                By:    /s/ David Blake
                                    DAVID T. BLAKE, ESQ. (#11059)

23

24

25

26

27

28

4161640.2

**Certificate of Electronic Service**

On February 4, 2022, I served **CitiMortgage Inc.'s Motion to Dismiss** by the following means to the persons as listed below:

    <u>  X  </u>      a.     ECF System (you must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary):

    <u>     </u>      b.     United States Mail, postage fully pre-paid (List persons and addresses. Attach additional paper if necessary):

John Henry Wright, Esq.
The Wright Law Group, P.C.
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102
Counsel for Plaintiff Twinrock Holdings, LLC

Krista J. Nielson, Esq.
Nevada Bar no. 10698
Tiffany & Bosco, P.A.
10100 W. Charleston Blvd., Ste. 220
Las Vegas, Nevada 89135
Counsel for Defendant National
Default Servicing Corporation

*/s/ Pam Lamper*
Pam Lamper
An employee of WOLFE & WYMAN LLP

4161640.2