JOHN HENRY WRIGHT, ESQ.
Nevada Bar No. 6182
**THE WRIGHT LAW GROUP, P.C.**
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102
Telephone: (702) 405-0001
Facsimile:  (702) 405-8454
Email: john@wrightlawgroupnv.com

*Attorneys for Plaintiff*
*TWINROCK HOLDINGS, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF  NEVADA

| | |
|---|---|
| TWINROCK HOLDINGS, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>CITIMORTGAGE, INC., a New York Corporation; NATIONAL DEFAULT SERVICING CORPORATION, a foreign corporation; DOES I through X, inclusive; and ROE ENTITIES XI through XX,<br><br>Defendants. | CASE NO. 2:22-cv-00143-JAD-VCF<br><br>(Removed from 8th Judicial District, State of Nevada Case No. A-22-846539-C) |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Comes now Plaintiff, TWINROCK HOLDINGS, LLC, ("TWINROCK") by and through its counsel of record, John Henry Wright, Esq of THE WRIGHT LAW GROUP, P.C., and hereby files its Motion for Summary Judgment on all claims set forth in its Amended Complaint (ECF No. 14).

This Motion is made pursuant to FRCP 56 and is based upon the memorandum of points and authorities contained herein, any exhibits attached hereto, the records and files of this case and

/ / /
/ / /
/ / /
/ / /
/ / /



1

1  any argument adduced at hearing on said motion.

2  Dated this 25th day of May, 2022.

**Respectfully submitted:**

**THE WRIGHT LAW GROUP, P.C.**

 /s/ *John Henry Wright, Esq.*
JOHN HENRY WRIGHT, ESQ.
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102
Telephone: (702) 405-0001
Facsimile: (702) 405-8454

*Attorney for Plaintiff*
*TWINROCK HOLDINGS, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   SUMMARY OF THE ARGUMENT**

NRS 106.240 is a Statute of Repose that requires the termination of a Deed of Trust ten years after the underlying debt becomes wholly due.  The only question presented for the Court to resolve is: When did the debt secured by the Deed of Trust become wholly due?  This is a legal issue.

Pursuant to NRS 106.240, a lien created of any mortgage or Deed of Trust upon any real property appearing of record, shall, at the expiration of 10 years after the debt becomes wholly due, terminate.  NRS 106.240 provides:

> The lien heretofore or hereafter created of **any** mortgage or **deed of trust** upon any real property, appearing of record, and not otherwise satisfied and discharged of record, ***shall at the expiration of 10 years*** **after the debt** secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof **become wholly due**, *terminate*, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged. (Emphasis added)

Here, the borrowers under the Note and Deed of Trust at issue, entered into a 30 year installment loan, but filed bankruptcy in 2010.  By virtue of the bankruptcy and operation of law, the underlying debt was accelerated and the maturity date advanced, making same wholly due. More than 10 years has passed since that acceleration. By passage of time and operation of Nevada law,  the Deed of Trust was terminated.   Therefore, the Deed of Trust that was foreclosed upon was no longer valid and any foreclosure sale was wrongful and void *ab initio*.



2

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute regarding the validity of a Deed of Trust under which defendants CITIMORTGAGE, INC's ("CITI") and NATIONAL DEFAULT SERVICING CORPORATION ("NATIONAL") have now foreclosed against the real property owned by TWINROCK.  The property is commonly known as **7313 Hospitality Place, Las Vegas, NV 89131, APN # 125-16-416-030** (the "Property") and was the subject of an HOA foreclosure in 2013 that resulted in six years of litigation in the Eighth Judicial District Court, Clark County, Nevada  ("State Court"), which was followed by another year and a half in the Nevada Supreme Court.  TWINROCK is the third owner of the Property since the HOA foreclosure.

The prior owners, Wayne and Debra Berwick ("Berwick") acquired title to the Property in May 2004 via a Grant Bargain Sale Deed recorded in the office of the Clark County Recorder as Instrument No. 20040514:0003181. (***Exhibit 1***).  The Property is located in a neighbourhood governed by CC&R's of the Elkhorn Community Association (the "HOA") and is subject to monthly assessments.

Approximately two (2) years later Berwick executed a Deed of Trust which was recorded in the Official Records of the Clark County Recorder on March 20, 2006 as instrument 20060320:0002449. (***Exhibit 2***).  The Deed of Trust was security for a Note in favor of Home Loan Center, Inc., dba Lending Tree Loans in the amount of $180,000.00.[1]

Berwick defaulted on the loan payments under the Note in August 2009.  Berwick also stopped paying the monthly HOA assessments. Therefore,     on or about January 20, 2010, the HOA recorded a Notice of Default and Election to Sell Under Notice of Delinquent Assessment Lien with the office of the Clark County Recorder as Instrument No. 20100120:0002839. (***Exhibit 3***).

On March 24, 2010, Berwick filed a petition for Chapter 7 Bankruptcy under case number 10-14965-mkn, at which time Berwick stated their intention to surrender the Property. On July 6, 2010, the bankruptcy court entered an Order Discharging Debtors. (***Exhibit 4***)  Berwick neither reaffirmed the debt secured by the Deed of Trust, nor did they make any further payments.

---

[1] Neither the Notice of Default, nor the Notice of Sale are accompanied by a copy of the Note.

3

1    On or about October 27, 2010, Cal-Western Reconveyance Corporation recorded a Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust, as Instrument No. 20101027:0003861, alleging that the above-mentioned Deed of Trust recorded on March 20, 2006, was in default and therein declared:

> That by reason thereof, the below set out beneficiary under such Deed of Trust, has executed and delivered to the Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said Trustee such Deed of Trust and all document evidencing obligations secured thereby and <u>has declared</u> and does hereby declare <u>all sums secured thereby immediately due and payable</u> and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Thus indicating that the debt had been previously accelerated by Home Loan Center, Inc., dba Lending Tree Loans., or MERS, the then beneficiary of record. (***Exhibit 5***)

On or about December 16, 2010 the Deed of Trust was transferred to defendant CITI pursuant to an Assignment of Deed of Trust recorded in the office of the Clark County Recorder as Instrument No. 20101216:0000294. (***Exhibit 6***). No further action was taken by CITI to continue with the foreclosure of the Deed of Trust.

On October 18, 2012, the HOA recorded a Notice of Foreclosure Sale in the office of the Clark County Recorder as Instrument No. 20121018:0001773. (***Exhibit 7***). Thereafter, the Property was acquired by Premiere One Holdings, Inc. on November 13, 2012, by successfully bidding on the Property at a publicly-held foreclosure auction in accordance with NRS § 116.3116, *et. seq.,* and by paying the sum of $4,100.00. A Trustee's Deed Upon Sale was recorded in the office of the Clark County Recorder as Instrument No. 20121119:0002852. (***Exhibit 8***).

On January 30, 2013, Premiere One Holdings, Inc., filed a Complaint in the State Court seeking Quiet Title to the Property, to which CITI responded by filing a Counterclaim asserting that the HOA foreclosure did not extinguish the Deed of Trust. After several years of litigation and a hearing on the parties' respective motions for summary judgment, the State Court issued its Findings of Fact and Conclusions of Law and entered Judgment Quieting Title to the Property in favor of Premiere One on September 24, 2018. The Findings of Fact, Conclusions of Law and Judgment were recorded in the office of the Clark County Recorder as Instrument No.

**4**

20181106:0002793. (***Exhibit 9***).  On October 24, 2018, CITI filed a Notice of Appeal.  However, CITI did not seek a stay of the judgment or post a supersedes bond.

On September 6, 2018, while the above-mentioned motions for summary judgment were pending, the Property was transferred to Golden Creek Holdings via a Quit Claim Deed recorded in the office of the Clark County Recorder as Instrument No. 20180906:0002119. (***Exhibit 10***). The Property was subsequently transferred to TWINROCK on November 15, 2018, via a Quit Claim Deed recorded in the office of the Clark County Recorded as Instrument No. 20181115:0002547. (***Exhibit 11***).

Approximately eighteen (18) months later, on April 28, 2020, the Nevada Supreme Court issued an Order vacating the State Court's Judgment declaring that, because the loan secured by the Deed of Trust was held by Freddie Mac, pursuant to 12 U.S.C. § 4716(j)(3), the Deed of Trust was not extinguished by the HOA foreclosure in 2012. (***Exhibit 12***).  Based on the remand by the Nevada Supreme Court, the State Court entered a final judgment on November 18, 2020, declaring that the Property was sold at the HOA foreclosure sale subject to the Deed of Trust held by CITI.

In the interim, on October 22, 2020, CITI caused to be recorded a Notice of Rescission of Notice of Breach and Default and Election to Sell to Cause Sale of Real Property Under Deed of Trust. (***Exhibit 13***).  This Notice purports to rescind the Notice of Default that was recorded on October 27, 2010, while acknowledging two things:  First, CITI acknowledges that the debt owed by Berwick was discharged back on July 6, 2010, when the U.S. Bankruptcy Court issued its Order of Discharge.  Second, the Notice also acknowledges that the debt had previously been accelerated by CITI's predecessor prior to the Berwick bankruptcy as a result of Berwick failing to make the August 1, 2009 payment and all subsequent payments.  The Notice states in bolded wording:

> PLEASE NOTE THIS IS NOT AN ATTEMPT TO COLLECT A DEBT, WAYNE AND DEBRA BERWICK'S BANKRUPTCY DISCHARGED THEM OF ANY PERSONAL LIABILITY ON THE LOAN secured by the above-referenced deed of trust. The purpose of this document is to decelerate the subject loan until such time as the deed of trust beneficiary or its successors or assigns MAY ELECT to foreclose pursuant to the deed of trust.

Approximately one year later, on or about September 9, 2021, CITI, through its Trustee NATIONAL caused a Notice of Default and Election to Sell Under Deed of Trust to be recorded as Instrument No. 20210909:0001557. (***Exhibit 14***).  Despite that the entire debt secured by the

5

Deed of Trust was discharged on July 6, 2009 and no further payments could become due, this Notice of Default states:

> That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
>
> The installments of principal and interest which became due on 08/01/2009 and all subsequent installments of principal and interest through the date of this Notice. . .

CITI served a Notice of Trustee's Sale in the office of the Clark County Recorder as Instrument No. 20211210-0002336, setting a foreclosure sale for January 19, 2022, at the front steps of the Nevada Legal News. The Notice of Trustee's Sale states that the total amount of the unpaid balance of the obligation secured by the property is $365,118.62. (***Exhibit 15***).

TWINROCK filed its Complaint in the Eighth Judicial District Court of Clark County, Nevada on January 11, 2022. Upon filing its Complaint, TWINROCK filed and recorded a lis pendens as Instrument No. 20220118:00712.

TWINROCK also moved for a Temporary Restraining Order and Preliminary Injunction since the contemplated sale was scheduled for January 19, 2022. The State Court granted TWINROCK's request for a Temporary Restraining Order on January 13, 2022 and directed TWINROCK to post a bond in the amount of $1,000, which TWINROCK posted on January 14, 2022, and the Court scheduled a hearing on the Motion for Preliminary Injunction for January 27, 2022, at 9:30 a.m.

After the issuance of the Temporary Restraining Order and one day before the hearing on TWINROCK's motion for Preliminary Injunction, CITI removed the case from State Court to the Federal District Court on January 26, 2022.

Upon removal from State Court, on February 4, 2022, CITI immediately filed a Motion to Dismiss TWINROCK's Complaint. CITI and NATIONAL immediately scheduled the foreclosure sale for March 4, 2022.

On February 22, 2022, TWINROCK, sought an order granting TWINROCK a Preliminary Injunction in order to prevent CITI and NATIONAL from foreclosing on the Property on March 4, 2022 and anytime thereafter while this litigation is pending.

1  On March 3, 2022, this Court denied TWINROCK's motion for preliminary injunction and allowed CITI and its co-defendant NATIONAL to proceed with the foreclosure of CITI's Deed of Trust and sell TWINROCK's Property.

CITI and NATIONAL conducted a non-judicial foreclosure sale on March 4, 2022, selling TWINROCK's Property to Breckenridge Property Fund 2016, LLC ("BRECKENRIDGE") for the amount of $369,000.00.

On September 11, 2015, TWINROCK filed an Amended Complaint. (ECF No. 14), which asserts causes of action for: 1)Wrongful Foreclosure- Violations of NRS 107, Against CITI and NATIONAL; 2)Wrongful Foreclosure/Chain of Title, Against CITI and NATIONAL; 3) Wrongful Foreclosure-Lack of Unity, Against CITI and NATIONAL; 4) Wrongful Foreclosure on Non-Existing Debt - Against CITI and NATIONAL; 5) Quiet Title - Against BRECKENRIDGE and CITI; 6) Unjust Enrichment, against CITI - Pleaded in the Alternative; and, 7) Civil Conspiracy- Against CITI and NATIONAL.

BRECKENRIDGE filed a Motion To Dismiss Amended Complaint on April 19, 2022 (ECF No. 20), which was denied by the Court on May 2, 2022 (ECF No. 25).

TWINROCK now files this Motion for Summary Judgment.

### III.  LEGAL ARGUMENT

**A.  Standard for Motion for Summary Judgment:**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

> In determining summary judgment, a court uses a burden-shifting scheme: When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the



THE WRIGHT LAW GROUP P.C.
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102
Tel: (702) 405-0001 Fax: (702) 405-8454

7

initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an essential element of that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The non-movant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

**B.     The Debt (Note) Was Accelerated By Law:**

Pursuant to NRS 106.240, a lien created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the

8

expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged. NRS 106.240 provides:

> The lien heretofore or hereafter created of **any** mortgage or **deed of trust** upon any real property, appearing of record, and not otherwise satisfied and discharged of record, ***shall at the expiration of 10 years*** after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof **become wholly due**, *terminate*, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged. (Emphasis added)

TWINROCK does not argue that the Deed of Trust became unenforceable after a discharge. Rather, under NRS 106.240, the Deed of Trust is only enforceable for a period of ten years after the underlying debt becomes wholly due, afterwards it is ***terminated***.

CITI, based on its prior arguments, misinterprets the meaning of the term "wholly due" and will likely argue that the debt can only be deemed wholly due by some action taken by the bank to accelerate, or based on the maturity date set forth in the terms of the Deed of Trust or the Note. However, this argument is misplaced. It is a basic tenet of the Bankruptcy Code that, regardless of the terms of the instrument or acts of the lender, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor. This was explained in 1984, at length, by the Federal Bankruptcy Court in *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297-298 (Bankr. S.D.N.Y. 1984), aff'd in part, rev'd in part, 60 B.R. 403 (S.D.N.Y. 1986), wherein the Court stated:

> 1.   *Acceleration of Debt*
>
> MFPC's first contention is that in order to accelerate the entire debt due under the loans, the long-term lenders were required to notify MFPC of their intent to accelerate the debt, as required by the terms of the various contracts.[2] Their failure to do so, alleges MFPC, precludes the lenders from asserting their claims for interest on the accelerated debt. The long-term lenders, on the other hand, take the position that the debts due under the various long-term agreements in question were automatically accelerated at the time of the filing of the petition by operation of Section 502(a) of the Code, irrespective of any contractual clause requiring notice.
>
> This Court agrees with the long-term lenders that the debt due them was automatically accelerated by the filing of the bankruptcy petition. It is a basic tenet of the bankruptcy Code that "bankruptcy operates as the acceleration of

---

[2] Respondents make the same argument here.

**9**

the principal amount of all claims against the debtor." (Citations omitted) . This tenet follows logically from the expansive Code definition of "claim", which allows any claim to be asserted against the debtor, regardless of whether such claim is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed [or] undisputed . . . ." 11 U.S.S. 101(4)(A), and from the Code's provision in Section 502 that a claim will be allowed in bankruptcy regardless of its contingent or unmatured status. . .

\* \* \*

Therefore, in the case at bar it was unnecessary, and indeed would have violated the stay, for the long-term lenders to take overt steps to accelerate the debt without first seeking a modification of the stay from this Court. **The debt was automatically accelerated upon the filing of the petition** by virtue of sections 101(4)(A) and 502 of the Code. (Emphasis added)

*In re Manville* was followed in 1987 by the California case of *In re Skyler Ridge*, 80 B.R. 500; 1987 Bankr. LEXIS 1935 (Dec. 1987), wherein the United States Bankruptcy Court reiterated the well established understanding that the filing of a bankruptcy petition accelerates the debt. In *Skyler Ridge*, the Court cited to the legislative history in the congressional record, [3] as well as *Manville*, stating:

> The automatic acceleration of a debt upon the filing of a bankruptcy case is well established *See, e.g., Manville Forest Products*, 43 Bankr. at 297; H.R. No. 95-595, 95 Cong., 1st Sess. 353 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6309; Sen. Rep. No 95-989, 95th Cong., 2d Sess. 63 (1978), reprinted in U.S. code Cong. & Admin. News 5787, 5849. In fact, it is this automatic acceleration that prevents Travelers from enforcing its "lock-in" clause.
>
> This acceleration is subject to deceleration in a plan under Chapter 11 or Chapter 13 of the bankruptcy code. *See, e.g., Manville Forest Products*, 43 Bankr. at 298 (Chapter 11); *Di Pierro v. Taddeo (In re Taddeo)*' 685 F.2d 24, 26-29 (2d Cir. 1982) (Chapter 13).[4]

---

[3] The legislative history shows that § 502(b) and (b)(2) reflect the basic bankruptcy law tenet that "bankruptcy operates as the acceleration of the principal amount of all claims against the debtor." H.R. Rep. No. 95-595, at 352-54. "Simply stated, the filing of a petition accelerates the principal amount of all unmatured claims against the debtor, whether or not a clause in a prepetition agreement provides that a bankruptcy filing accelerates the maturity date." 4-5 Collier on Bankruptcy P502.03

[4] While the *Skyler Ridge* Court stated that the acceleration is subject to deceleration under Chapter 11 or Chapter 13, there is no such provision in the bankruptcy code under a Chapter 7. This is because in a Chapter 7, such as in this case, there is no plan under which repayment of the debt could occur.

10

In prior filings in this Court, CITI has argued that the debt cannot become wholly due earlier than the originally contemplated, and now, irrelevant and inaccurate, maturity date contained in the note. But this ignores the fact that **the bankruptcy changed the note's maturity date**[5][6][7] and the same argument CITI raised has been examined and rejected before. In *HSBC Bank USA v. Calpine Corporation*, 2010 U.S. Dist. LEXIS 96792; 2010 WL 3835299 (Sept. 15, 2010), the District Court for the Southern District of New York addressed this issue as follows:

> Trustee argues that ordinary principles of contract law apply to its claim for expectation damages. The argument misses the mark. According to the terms of the notes, a voluntary bankruptcy filing constitutes an event of default that accelerates and matures the notes, thus making them due and payable immediately. **Even without these provisions, the Bankruptcy Code would require the same result, as the filing of a bankruptcy petition renders all of the petitioner's outstanding debts mature and payable**. *See, e.g., In re Granite Broad. Corp.*, 369 B.R. 120, 144 (Bankr. S.D.N.Y. 2007); *In re Ridgewood Apartments of DeKalb County. Ltd.*, 174 B.R. 712, 720 (Bankr. S.d. Ohio 1994) ("Even without specific contractual language, a bankruptcy filing acts as an acceleration of all of a debtor's obligations.") . . .
>
> \* \* \*
>
> . . . Debtor's repayment of the notes also did not occur prior to maturity, because **accelerated debts are mature**. *See In re LHD Realty Corp.*, 726 F.2d 327, 330-31 (7th Cir. 1984) (stating that "acceleration, by definition,

---

[5] The Bankruptcy Code substantively alters the rights and remedies of both debtors and creditors in a most fundamental way. *In re Pease*, 195 B.R. 431, 434 (Bankr. D. Neb. 1996).

[6] The United States Supreme Court in *Von Hoffman v. City of Quincy*, 71 U.S. 535 (1866), explained, " it is also settled that the law which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, **as if they were expressly** ... **incorporated in its terms**. This principle embraces alike those which affect its validity, construction, discharge, and enforcement." *Id*. at 550, see also *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 189 (1902) (holding that "all contracts were made with reference to existing [bankruptcy] laws.").

[7] David S. Kupitz, *The Bankruptcy Code is an Implicit Part of Every Contract: Minimizing the Impact of Chapter 11 on the Non-Debtor's Bargain*. The Business Lawyer, Volume 54 (November 1998); citing *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 435 (1934); and *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 516, 518 (1938) ("The mortgage contract was made subject to constitutional power in the Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract. . . . [I]f Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect . . . property rights, provided the limitations of the due process clause are observed.")

11

> advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity"); *In re Ridgwood Apartments*, 174 B.R. at 720 (It would be anomalous for acceleration of an obligation to be construed as prepayment. . . . Even without specific contractual language, a bankruptcy filing acts as an acceleration of all a debtor's obligations."); *Northwestern Mut. Life Ins. Co.*, 11 Misc.3d at 982-83, 816 N.Y.S.2d 831 (collecting cases and stating that **"[a]cceleration is a change in the date of maturity from the future to the present**. Once the maturity date is accelerated to the present, it is no longer possible to repay the debt before maturity.")

(*HSBC Bank USA v. Calpine Corporation*, 2010 U.S. Dist. LEXIS 96792; 2010 WL 3835299 at 9 -14) (Emphasis added). Thus, there is no distinguishing acceleration from maturity. The result is the same and the debt is "wholly due" regardless of the terms of the note or the deed of trust.

Even if the terms of the Deed of Trust or the Note address acceleration, upon commencement of a bankruptcy case the implicit provisions of the contract embodying the Code are activated, and the Code may interfere with and override the ordinary exercises of contractual rights. *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 517, ("Bankruptcy proceedings constantly modify and affect the property rights established by state law"); *Coleman Oil Co. v. Circle K Corp.*, 127 F.3d 904 910 (9th Cir. 1997) (Explaining that "all kinds of interferences with contractual rights occur in bankruptcy proceedings").

One bankruptcy court cogently summarized substantive provisions of the Code that fundamentally impact contract rights as follows:

> The Bankruptcy Code substantively alters the rights and remedies of both debtors and creditors in a most fundamental way. For example, section 502 disallows certain claims which would be enforceable under non-bankruptcy laws. Under section 502(b), claims for unmatured interest are not allowed (except as provided in section 506), a landlord's claim under section 502(b)(6) for breach of a lease is limited in a manner inconsistent with the law of may states, and some claims are simply disallowed. See § 502(b)-(j). . .

*In re Pease*, 195 B.R. 431, 434 (Bankr. D. Neb. 1996). Further still, the Ninth Circuit Court of Appeals stated that "[e]quity may not be invoked to defeat clear statutory language, nor to reach results inconsistent with the statutory scheme established by the Code. " *Committee of Creditors Holding Unsecured Claims v. Koch Oil Co.*, (*In re Powering Oil Co.* ), 59 F.3d 969, 973 (9th Cir. 1995).

CITI has also previously argued that only the bank can accelerate the debt in accordance with the terms of the Deed of Trust because NRS 106.240 uses the phase "according to the terms thereof". However, the Deed of Trust and Note say according to the law, specifically federal law "This Security Instrument shall be governed by federal law." (Deed of Trust at, page 10, paragraph 16). Bankruptcy law states that the debt is accelerated to the extent that all of the principal is now immediately due and owing. *In re Manville, supra.*

Thus, the question remaining is whether acceleration and/or advanced maturity of the debt is the same thing as "wholly due." While there is no specific Nevada case addressing the effect of a bankruptcy discharge on a Deed of Trust in relation to NRS 106.240's termination of such an encumbrance ten-years after the debt secured thereby is deemed "wholly due" - the Nevada Supreme Court has recently stated in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 138 Nev. Adv. Op. 22 (April 22, 2022), "[t]his Opinion assumes that acceleration makes the loan "wholly due." *Id.* n.2, and the Nevada Supreme Court has used the term "maturity" in the same manner as "wholly due" when discussing the language contained in NRS 106.240. See *Lakes v. U.S. Bank Trust*, 137 Nev. Adv. Rep. 85 (2021). Thus, it is highly probable that the Nevada Supreme Court, when presented with the issue, will conclude that a bankruptcy discharge has the effect of declaring the debt "wholly due" for purposes of NRS 106.240.

**C.    Discharge in Bankruptcy Results in the Debt Becoming "Wholly Due":**

The Ninth Circuit Court of Appeals ("Ninth Circuit") has determined that the discharge of a debt in bankruptcy, contained in an installment contract, has the effect of making the entire debt immediately due, regardless of whether the creditor has itself accelerated the debt. In *Jarvis v. Federal National Mortgage Association*, Case No. 17-35428 (June 14, 2018) (Unpublished)(A copy of which is attached hereto as *Exhibit 16*), the Ninth Circuit addressed the effect that discharge has on a debt that has not been reaffirmed by the debtors, even if the debt is owned by Fannie Mae or Freddie Mac. The Ninth Circuit, addressing the effect of bankruptcy discharge on a Deed of Trust stated:

> The Jarvises never reaffirmed or made any further payments on the note after their bankruptcy, and neither Fannie Mae nor any prior holder of the deed of trust ever accelerated the debt or initiated foreclosure proceedings. The statute of limitations to foreclose on the deed of trust ran from the last

13

> installment due before the Jarvises' bankruptcy discharge in February 2009 and expired before the Jarvises brought this quiet title action nearly seven years later in February 2016. Summary judgment in favor of the Jarvises on their quiet-title claim was therefore appropriate.

The Ninth Circuit affirmed judgment from the Federal District Court that had ruled that the bankruptcy discharge has the effect of making the discharge date the actual maturity date of the debt. This is because the debt is discharged and no further payments can be deemed to be due. The District Court, relying on two previous decisions from the Washington appellate courts, stated:

> The Court agrees with *Silvers*' and *Edmundson's* holdings. The discharge of a borrower's personal liability on his loan – the cessation of his installment obligations – is the analog to a note's maturation. In both cases, no more payments could become due that could trigger RCW 4.16.040's limitations period. The last-owed payment before the discharge of a borrower's personal liability on a loan is the date from which a secured creditor has six years to enforce a deed of trust securing the loan.

Thus, although NRS 106.240 is a statute of repose, the Berwick bankruptcy discharge has the same effect because the debt was fully matured/wholly due on the date of the last payment due from Berwick on the debt, but in every circumstance no later than July 6, 2010, more than ten years ago, As such, the Deed of Trust has been terminated, was unenforceable at the time of the foreclosure sale, and any foreclosure thereunder is void *ab initio*.

In prior motions in this Court, CITI has argued that the Court should ignore the Ninth Circuit decision in *Jarvis v. Federal National Mortgage Association*, Case No. 17-35428 (June 14, 2018) (Unpublished), because the Washington State Supreme Court has since rejected the Federal Court of Appeals' application of Federal Bankruptcy law to Washington State's six-year statute of limitations and explained that its prior ruling in *Edmundson* was only addressing the statute of limitations as it related to each installment payment.

The pertinent aspect of *Jarvis,* for purposes of the instant case, has nothing to do with when the statute of limitations accrues on an installment contract under the law of the State of Washington. What is key, and what *does* matter here, is the courts' analyses and adoption of the rule pertaining to the *effect of a bankruptcy discharge on a debt becoming wholly due*. Future payments are no longer due. This is akin to maturity. Therefore, the Note has matured. It will not mature some day in the future. It has already matured and was wholly due on July 6, 2010.

14

Further, the Colorado Court of Appeals has also considered the *Edmundson* and *Jarvis* decisions and determined the effect that a discharge in bankruptcy is that the debt is matured upon said discharge because no further payments could be due. In *Silvernagel v. U.S. Bank Nat'l Ass'n*, Case No. 20CA1035 (October 21, 2021), U.S. Bank, like CITI here, argued that because it did not *itself* accelerate repayment of the debt, it could not have become matured. The Colorado Court of Appeals disagreed:

> Because it did not accelerate repayment of the debt, US. Bank argues that a new cause of action accrues upon Silvernagel's default on each monthly installment until the maturity date of the loan, i.e., October 1, 2036.[8] Consequently, the statute of limitations has not accrued, much less expired, with respect to parts of the debt.
>
> US Bank's argument, however, overlooks the effect of Silvernagel's October 2012 discharge in bankruptcy.
>
> In *Edmundson*, 378 P.3d 272, the Washington Court of Appeals addressed the effect of a discharge in bankruptcy on the operation of a statute of limitations. Like Colorado, in Washington "when recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Id*. at 277 (quoting *Herzog v. Herzog*, 22 Wn.2d 382, 161 P.2d 142, 144-45 (Wash. 1945). The *Edmundson* court concluded that "the statute of limitations for each missed monthly payment accrued" on the date it was due "until the [parties] no longer had personal liability [for making payments] under the note. They no longer had such liability as of the date of their bankruptcy discharge." *Id*. at 278.
>
> Applying *Edmundson*, the federal district court for the Western District of Washington reached the same conclusion in *Jarvis v. Federal National Mortgage Ass'n* on facts similar to the ones here. (citation omitted). There, a bankruptcy court discharged the homeowner's personal obligation on the Note. 2017 U.S. Dist. LEXIS 62102, at *1. More than six years after the discharge, the lender commenced a trustee sale, asserting that the discharge did not affect its ability to take in rem action against the property. *Id.* Rejecting that argument, the court concluded:
>
>> The last payment owed commences the final six-year period to enforce a deed of trust securing a loan. This situation occurs when the final payment becomes due, such as when the note matures or a lender unequivocally accelerates the note's maturation. It also occurs at the payment owed immediately prior to the discharge of a borrower's personal liability in bankruptcy, because after discharge, a borrower no longer has forthcoming installments that he must pay.
>
> \*\*\*

---

[8] CITI has made a nearly identical argument in this case.

15

> The discharge [in bankruptcy] of a borrower's personal liability on his loan – cessation of his installment obligations – is the analog to a note's maturation. In both cases, no more payments could become due that could trigger . . . [a] limitations period.
>
> 2017 U.S. dist. LEXIS 62102, [WL] at *2-3 (citations omitted in original); *see Jarvis*, 726 F.App'x at 667 ("The final six-year period to foreclose runs from the time the final installment becomes due. This may occur upon the last installment due before discharge of the borrower's personal liability on the associated note").
>
> **We are persuaded by, and consequently adopt, the reasoning in *Jarvis*.** As the federal district court in *Jarvis* said, "[t]he discharge of a borrower's personal liability on a note . . . alert[s] the lender that the limitations period to foreclose on a property held as a security has commenced. 2017 U.S. Dis. LEXIS 62102, 2017 WL 1438040, at *2.
>
> According to the allegations in the complaint, (1) Silvernagel was discharged in bankruptcy of personal responsibility for the underlying debt in October 2012; and (2) as of June 2019, US Bank had not initiated foreclosure proceedings with respect to the deed of trust. If true, US. Bank would have failed to timely seek relief within the applicable six-year limitations period and, consequently, would be barred from foreclosing on Silvernagel's property. Silvernagel would, then be entitled to the relief sought in their complaint.

(2021 Colo. App, LEXIS 1441 at 11-14, Emphasis added). Here, there is little difference in the facts, except that in this case the borrowers were discharged in bankruptcy on July 6, 2010, which means that under NRS 106.240, which is a statute of repose, the deed of trust and CITI's ability to enforce it were terminated not later than July 6, 2020, ten years after the last possible payment became "wholly due."

Berwick entered into a 30 year debt. Berwick filed bankruptcy. The debt was fully and wholly accelerated. More than 10 years has passed since that acceleration. By operation of Nevada law, NRS 106.240, the Deed of Trust is terminated. CITI's attempt to decelerate is irrelevant. It cannot overrule federal law. The Deed of Trust and Note are subject to and not above federal law. The Note accelerated on July 6, 2010. The 10-year time to foreclose lapsed on July 6, 2020. CITI failed to timely foreclose. The debt is discharged and the Deed of Trust is of no effect or authority and any sale thereunder is void.

/ / /

/ / /

/ / /



## VI. CONCLUSION

The Deed of Trust was terminated by law and the foreclosure thereon was wrongful. TWINROCK has, and will continue to suffer irreparable harm if the foreclosure sale is not declared invalid and void.

Based on all the foregoing, TWINROCK HOLDINGS, LLC requests that the Court enter summary judgment on all Causes of Action set forth in Plaintiff's Amended Complaint.

DATED this 25th day of May, 2022.

**Respectfully submitted:**
**THE WRIGHT LAW GROUP, P.C.**

/s/ *John Henry Wright, Esq.*
JOHN HENRY WRIGHT, ESQ.
Nevada Bar No. 6182
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102
Telephone: (702) 405-0001

*Attorneys for Plaintiff*
*TWINROCK HOLDINGS, LLC*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that I am an employee of THE WRIGHT LAW GROUP, P.C. and that on the 25th day of May, 2022, I caused the foregoing PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT using the CM/ECF system, which will cause the document to be served upon the following counsel of record:

**WOLFE &WYMAN LLP**
David T. Blake, Esq.                    dtblake@ww.law

*Attorneys for Defendant Citimortgage, Inc.*

TIFFANY & BOSCO, P.A.
Krista J. Nielson, Esq.

*Attorneys for Defendant National Default Servicing Corporation*

**WEDGEWOOD, LLC**
Casey J. Nelson, Esq.          caseynelson@wedgewood-inc.com
Brandon Trout, Esq.            btrout@wedgewood-inc.com

*Attorneys for Defendant Breckenridge Property Fund 2016*

I further certify that I served a copy of this document by mailing a true and correct copy, thereof, postage prepaid, addressed to:

None.

　　　　　　　　　　　　　　　　　　*/s/ Candi Ashdown*
　　　　　　　　　　　　　　　　　　An employee of **THE WRIGHT LAW GROUP, P.C.**

