David T. Blake, Esq. (#11059)
WOLFE & WYMAN LLP
6757 Spencer Street
Las Vegas, NV  89119
Tel: (702) 476-0100
Fax: (702) 476-0101
dtblake@ww.law

Attorneys for Defendant
CITIMORTGAGE, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TWINROCK HOLDINGS, LLC, a Utah Limited Liability Company, <br><br> Plaintiff, <br> v. <br><br> CITIMORTGAGE, INC., a New York Corporation; NATIONAL DEFAULT SERVICING CORPORATION, a foreign corporation; DOES I through X, inclusive; and ROE ENTITIES XI through XX, <br><br> Defendants. | CASE NO.:    2:22-cv-00143-JAD-VCF <br><br> **DEFENDANT CITIMORTGAGE, INC.'S MOTION TO DISMISS AMENDED COMPLAINT** |

**I.**

**INTRODUCTION**

This case is part of a growing body of second-generation HOA foreclosure lawsuits. The property at issue is located at 7313 Hospitality Place, Las Vegas, Nevada 89131, APN (125-16-416-030 (the "Property").  CitiMortgage, Inc. ("CitiMortgage") previously litigated and prevailed in a quiet title action against the Plaintiff, Twinrock Holdings' ("Twinrock's") successor in interest. Twinrock now seeks to further burden Nevada dockets with additional meritless post-HOA foreclosure litigation. This case specifically embodies the practice that is generally prevalent among the HOA cases—ignoring settled law and advancing arguments that have already been repeatedly rejected by both state and federal appellate courts. Remarkably, Twinrock's Frist Amended

1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

Complaint (the "Amended Complaint") advances legal theories that this Court previously rejected in response to Twinrock's requests for a temporary restraining order and preliminary injunction. *See* Dkt. No. 12. The Court specifically rejected Twinrock's arguments that: (a) the prior acceleration caused the 10-year period in NRS 106.240 to commence, (b) that the borrowers' prior bankruptcy constituted an acceleration that would trigger NRS 106.240, and (c) that Twinrock was a bona fide purchaser. *See* Dkt. No. 12. Nevertheless, Twinrock's Amended Complaint recycles these arguments/contentions without any new reasoning or legal citation. *See* Dkt. No. 14 ¶¶ 33, 66, 79 (acceleration), 83-85 (bankruptcy) 88-90 (bona fide purchaser). Twinrock has made almost no modification to its legal theories in this case in response to this Court's order denying Twinrock's request for TRO/preliminary injunction. The Court should again reject Twinrock's arguments for the reasons discussed below.

CitiMortgage, on behalf of the Federal Home Loan Mortgage Corporation ("Freddie Mac") foreclosed on the Property in a foreclosure sale on or around March 4, 2022. Twinrock now raises new claims against CitiMortgage and the buyer at the foreclosure sale for wrongful foreclosure, unjust enrichment, and civil conspiracy. Although the claims are new to this action, they are not new or novel claims for relief. Twinrock recycles claims and arguments that have been repeatedly rejected by state and federal appellate courts.

Twinrock's attempt to cause this Property to undergo a second round of HOA foreclosure litigation should be stopped. Real estate lenders cannot be subject to merry-go-round litigation every time property in some stage of foreclosure changes hands. All of Twinrock's claims for relief are premised on demonstrably deficient legal theories that are not plausible. Moreover, this is Twinrock's second attempt to state viable claims for relief and Twinrock adamantly refuses to change its allegations or arguments. Consequently, the Amended Complaint should be dismissed with prejudice.

///

///

///

///

## II.

## BACKGROUND

**A.     Property and Litigation History**

The Nevada Court of Appeals affirmed that Freddie Mac has a valid and enforceable first priority Deed of Trust (the "Deed of Trust") encumbering the Property. *See CitiMortgage, Inc. v. Premier One Holdings, Inc.*, 461 P.3d 904 (Nev. App. 2020). The underlying debt is a mortgage loan (the "Loan") consisting of the Deed of Trust, which secures a Promissory Note (the "Promissory Note") executed by borrowers Wayne and Debra Berwick (the "Borrowers"). A copy of the Deed of Trust is attached hereto as Exhibit A. Prior to that holding, CitiMortgage, as Freddie Mac's Servicer, was involved in HOA foreclosure litigation with Twinrock's predecessor-in-interest, Premier One Holdings, Inc. ("Premier One"). Premier One purchased the property at an HOA foreclosure sale on or around November 19, 2012. *See* Dkt. 14 at ¶ 21. Premier One then sued CitiMortgage on January 20, 2013, seeking to quiet title on the theory that the HOA foreclosure sale extinguished Freddie Mac's first position Deed of Trust. Following a bench trial held in Nevada's Eighth Judicial District Court, Premier One prevailed on its claim that the HOA foreclosure sale extinguished Freddi Mac's Deed of Trust. CitiMortgage appealed and prevailed on appeal. The quiet title lawsuit concerning this Property is hereinafter referred to as the "First Lawsuit." Premier One transferred the Property to Golden Creek Holdings on or around September 6, 2018. Dkt. No. 14 ¶ 24.

During the First Lawsuit, CitiMortgage recorded a Lis Pendens (the "Lis Pendens") on the Property on May 31, 2017. *See* Lis Pendens, attached hereto as Exhibit B. The Lis Pendens notified all prospective purchasers of the Property that the outcome of First Lawsuit could affect title to or possession of the Property. While the First Lawsuit was proceeding on appeal no party sought to expunge the Lis Pendens. CitiMortgage did not release the Lis Pendens until May 28, 2020, which was after the Nevada Court of Appeals vacated the District Court's original judgment and confirmed that the Deed of Trust still encumbered the Property. *See* Release of Lis Pendens, attached hereto as Exhibit C. Twinrock purchased the Property on November 15, 2018, prior to the release of the Lis Pendens. Twinrock never sought to cancel or expunge the Lis Pendens at any point during its ownership of the Property.

**B.      Foreclosure Notices and the Borrower's Bankruptcy**

The Deed of Trust became at risk of foreclosure when the original borrowers fell behind in their payments sometime in August of 2009. Dkt. No. 14 ¶ 9. The borrowers filed a Chapter 7 Bankruptcy (Case no. 10-14965-mkn) and indicated their intent to surrender the Property on March 24, 2010. Dkt. No. 14 ¶ 13. The borrowers' personal obligation to pay the Loan was discharged on or around July 6, 2010. Cal-Western Reconveyance Corporation, the trustee at the time, recorded a Notice of Breach and Default and Election to Cause Sale of Real Property Under Deed of Trust (the "First NoD") on October 27, 2010. Dkt. No. 14 ¶ 16. This First NoD stated that the debt under the Deed of Trust had been accelerated. Dkt. No. 14 ¶ 16. On or around December 16, 2010, MERS, as nominee for the lender and lender's successors and assigns, recorded an assignment of the Deed of Trust to CitiMortgage, in its capacity as servicer for Freddie Mac. Dkt. No. 14 ¶ 17. As noted above, CitiMortgage recorded the Lis Pendens on May 31, 2017, the Nevada Supreme Court ruled that the Deed of Trust remained an encumbrance on the Property on April 28, 2020 (Dkt. No. 14 ¶ 29), and CitiMortgage released the Lis Pendens on May 28, 2020. CitiMortgage also recorded a Notice of Rescission of Notice of Breach and Default and Election to Sell to Cause Sale of Real Property Under Deed of Trust (the "Rescission") on October 22, 2020. *See* Rescission, attached hereto as Exhibit D. CitiMortgage recorded the Rescission less than 10 years after the First NoD was recorded. The Rescission decelerated the Loan, consistent with Nevada law authorizing such deceleration, as discussed below.

With one notable exception, each of the foregoing facts are admitted in the Amended Complaint. The only fact not admitted to in the Amended Complaint is the recoding and subsequent release of the Lis Pendens, which is conveniently omitted from the Amended Complaint. Nevertheless, the Court can take judicial notice of the Lis Pendens without converting this Motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment.").

///

///

**C.     Procedural History**

After the First Lawsuit was fully resolved, CitiMortgage restarted foreclosure proceedings by recording a Notice of Default and Election to Sell Under Deed of Trust on September 9, 2021. In response, Twinrock filed this Action in the Eighth Judicial District Court in Clark County Nevada, Case No. A-22-946539-C, on January 11, 2022. CitiMortgage removed the case on January 26, 2022. Dkt. No. 1. Twinrock unsuccessfully attempted to stay foreclosure (Dkt. No. 12), and the Property was sold to Defendant Breckenridge Property Fund 2016, LLC on or around March 4, 2022. Dkt. No. 14 ¶ 40.

As argued below, the foregoing admitted facts would not permit Twinrock to receive any of the relief requested in the Amended Complaint. Accordingly, the Amended Complaint must be dismissed.

### III.

### LEGAL STANDARD

To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim is facially plausible 'when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *2 (N.D. Cal. Sept. 9, 2015) (quoting *Iqbal*, 556 U.S. at 663). A complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While a court must take as true all the factual allegations, the court is "not required to accept as true legal conclusions couched as factual allegations." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020). Documents whose contents are alleged in a complaint but which are not physically attached to the pleading may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *See, e.g., Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018).

1    Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a party's pleading

2    "should [be] freely give[n] ... when justice so requires," because the purpose of the rule is "to

3    facilitate decision on the merits, rather than on the pleadings or technicalities." *Chudacoff v. Univ.*

4    *Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir.2011) (cleaned up). Nevertheless, the "general

5    rule that parties are allowed to amend their pleadings ... does not extend to cases in which any

6    amendment would be an exercise in futility or where the amended complaint would also be subject

7    to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998). Futility alone

8    can justify a court's refusal to grant leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th

9    Cir.1995).

## IV.

## ARGUMENT

**A.    Twinrock's claims seeking to invalidate Freddie Mac's Deed of Trust are meritless and must be dismissed as a matter of law.**

14    Twinrock's Fourth and Fifth and claims for relief rely entirely upon Twinrock's argument

15    that the Deed of Trust cannot be enforced. As discussed below, Twinrock's various arguments that

16    the Deed of Trust cannot be enforced with respect to these claims are meritless and the Amended

17    Complaint 's Fourth and Fight Claims for Relief must be dismissed

**1.    The Recorded Rescission Renders NRS 106.240 Inoperative**

19    This Court has already ruled, in the context of Twinrock's motion for TRO, that

20    CitiMortgage effectively rescinded the prior acceleration. *See* Dkt. No. 12.. Twinrock contends that a

21    Notice of Default recorded on October 27, 2010, or some unspecified event preceding it, or the

22    Borrower's July 6, 2010 discharge of the obligations under the note in the Borrower's bankruptcy

23    case triggered the start of the NRS 106.240 ten-year time period.  For the reasons set forth below,

24    that is not correct.  But even if the ten-year time period had been triggered, CitiMortgage's recorded

25    Rescission on October 22, 2020 ("Rescission") stopped and reset the ten-year time period which

26    would not begin to run again until a new triggering event occurred—negating any application of the

27    statute to extinguish the deed of trust at issue here ("Deed of Trust").

28    ///

1    As the Nevada Supreme Court has explained, a rescission notice "effectively cancel[s] the

2  acceleration" and resets NRS 106.240's ten-year time period. *Glass v. Select Portfolio Servicing,*

3  *Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020) (unpublished disposition). In *Glass*,

4  the Nevada Supreme Court held that, under Nevada law, a recorded rescission places the lender and

5  borrower in the same position as if the notice of default had never been recorded. *See id.*; *see also*

6  *Holt v. Reg'l Tr. Servs. Corp.*, 266 P.3d 601, 606 (Nev. 2011) (holding that "[a] notice of rescission

7  renders moot disputes concerning the notice of default or its timing," and thus "resets the right-to-

8  cure and other time periods provided by law for the debtor's protection"); NRS 107.550(3) (Upon

9  the recording of a rescission of a notice of default, the "beneficiary of the deed of trust is thereupon

10  restored to its former position and has the same rights as though … a notice of default and election to

11  sell had not been recorded.").

12    Recently, the Nevada Supreme Court issued a published decision denying an HOA sale

13  purchaser's petition for rehearing in a materially identical case and confirming its holding in *Glass*

14  that a recorded rescission effectively resets the NRS 106.240 ten-year time period. *SFR Invs. Pool 1,*

15  *LLC v. U.S. Bank, N.A.*, --- P.3d ---, 2022 WL 1051628, at *4 (Nev. Apr. 7, 2022). The Nevada

16  Supreme Court was "not persuaded by [the HOA sale purchaser's] argument" that the language of

17  the notice of rescission rescinded only the election to sell the property, rather than any acceleration

18  of the Loan. *Id.* The Nevada Supreme Court concluded that the language of the recorded notice of

19  rescission "d[id] not change the fact that the bank rescinded the notice of default—the document that

20  accelerated the loan." *Id.*[1] The language of the rescissions at issue in both *Glass* and *SFR v. U.S.*

21  *Bank* are substantively identical to the language of the Rescission in this case and control the

22  outcome here.[2]

23

24  [1]    The Nevada Supreme Court noted that the language of the notices of rescission at issue in
       *Glass* and *SFR v. US Bank* were identical, and that no part of the language included in the rescissions
25     changed the analysis that the recorded rescissions effectively rescinded any purported acceleration of
       the loans.
26  [2]    This Court has already ruled that the Rescission was effective to rescind or cancel the prior
       acceleration. *See* Dkt. # 12. Specifically, as here, the rescission at issue in *Glass* and *SFR v. U.S.*
27  *Bank* stated: "[Bank] does hereby rescind, cancel and withdraw the Notice of Default and Election
       to Sell hereinafter described, provided, however, that this rescission shall not be construed as
28  waiving, curing, extending to, or affecting any default, whether past present or future,... or as
       impairing any right or remedy thereunder, and it shall he deemed to be only an election without

Indeed, before its decision in *SFR v. U.S. Bank*, the Nevada Supreme Court repeatedly confirmed its decision in *Glass* in unpublished decisions. *Saticoy Bay LLC Series10717 Refectory v. Bank of Am., N.A.*, No. 82153, 2021 WL 5276630, at *1 (Nev. Nov. 10, 2021) (unpublished disposition); *Saticoy Bay LLC, Series 2920 Bayliner Ave. v. US Bank Nat'l Ass'n*, No. 82323, 2021 WL 5276381, at *1 (Nev. Nov. 10, 2021) (unpublished disposition); *SFR Invs. Pool 1 v. U.S. Bank, N.A.*, No. 81293, 2021 WL 4238769, at *1 (Nev. Sept. 16, 2021) (unpublished disposition). And the Ninth Circuit has confirmed this same principle of Nevada law. *Daisy Tr. v. Fannie Mae*, No. 21-15595, 2022 WL 874634, at *2 (9th Cir. Mar. 24, 2022) (unpublished disposition); *Bank of Am., NA v. SFR Invs. Pool 1, LLC* ("*BANA v. SFR*"), 849 F. App'x 211 (9th Cir. 2021) (unpublished disposition); *TRP Fund VIII, LLC v. NewRez LLC*, No. 20-17129, 2021 WL 5823701 (9th Cir. Dec. 8, 2021) (unpublished disposition); *Bank of Am., NA v. Summit Real Estate Group*, No. 20-16624, 2021 WL 5507377 (9th Cir. Nov. 24, 2021) (unpublished disposition).

All those holdings apply with equal force here. Borrowers' failure to make their mortgage payments led the servicer to record the Notice of Default. The Rescission stated that CitiMortgage "does hereby rescind, cancel, withdraw, and revoke without prejudice the acceleration of the Note, or Deed of Trust, or both, as referenced in the [Notice of Default] listed above …." Dkt No. 4-4, Ex. D. Thus, the Recission had the effect of "cancel[ling] the demand for full payment of the note," rendering NRS 106.240 inapplicable. *BANA v. SFR*, 849 F. App'x at 212; *see also Glass*, 2020 WL 3604042, at *1; *see also SFR v. U.S. Bank*, 2022 WL 1051628, at *4. As with the rescissions at issue in *SFR v. U.S. Bank* and *Glass*, the Recission here states that it is "only an election, without prejudice, not to cause a sale to be made," Dkt No. 4-4, Ex. D, but as the Nevada Supreme Court confirmed in *SFR v. U.S. Bank* and *Glass*, the Rescission stops and resets the NRS 106.240 time-period, nevertheless, *SFR v. U.S. Bank*, 2022 WL 1051628, at *4; *Glass*, 2020 WL 3604042, at *1.

---

prejudice not to cause a sale to be made pursuant to such [Notice of Default], and it shall not in any way alter or change any of the rights, remedies or privileges secured to the Beneficiary and/or Trustee under such Deed of Trust, nor modify, nor alter in any respect any of the terms, covenants, conditions or obligations contained therein." *SFR v. U.S. Bank*, 2022 WL 1051628, at *3. The language in the recorded rescission here is virtually identical. Ex. D.

2.      **The Prior Quiet-Title Action Negates Twinrock's Claim.**

The Rescission is not the only reason Twinrock's claim fails.  Even if the NRS 106.240 ten-year time period had been triggered and not reset, the long-running state-court quiet-title litigation ("First Lawsuit") to determine the Deed of Trust's validity paused it.

i.      **Twinrock Seeks an Absurd Result.**

Tolling the ten-year period during the pendency of the First Lawsuit comports with NRS 106.240's purpose:  to clear abandoned and forgotten liens from the publicly recorded land records, thereby rendering title marketable without the need for quiet-title litigation.  As one federal court explained, ancient-lien statutes "have the obvious purpose of clearing titles of old and obsolete mortgages."  *LBM Fin. LLC v. Shamus Holdings, Inc.*, No. CIV. 09-11668-FDS, 2010 WL 4181137, at *4 (D. Mass. Sept. 28, 2010) (cleaned up).  It would make no sense to apply NRS 106.240 here, as the Deed of Trust was obviously not abandoned or forgotten.

Terminating a lien under NRS 106.240 where that lien's validity was recently litigated between the lienholder and the titleholder's predecessor in interest for over seven years of the ten-year period would violate the canon against interpreting statutes to require absurd results.  No one could reasonably believe the Deed of Trust had been simply left to lie fallow and invalidating it as "old and obsolete" or abandoned and forgotten would make a mockery of the judgment confirming its validity.  As the U.S. Supreme Court has explained, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."  *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982).[3]  Under the circumstances, Twinrock cannot plausibly claim to believe that either Freddie Mac or CitiMortgage abandoned the Deed of Trust or lack the intent to enforce it.  Nor could anyone checking the land records reasonably infer that Freddie Mac and CitiMortgage did not intend to protect and enforce the Deed of Trust.  Accordingly, this Court should hold that NRS 106.240 did not extinguish the Deed of Trust because the statutory time-period was tolled during the pendency of the First Lawsuit.

---

[3]      The Nevada Supreme Court concurs: "When interpreting a statute, this court resolves any doubt as to legislative intent in favor of what is reasonable, and against what is unreasonable. … A statute should be construed in light of the policy and the spirit of the law, and the interpretation should avoid absurd results."  *Hunt v. Warden*, 903 P.2d 826, 827 (Nev. 1995).

4249407.1

### ii.    The Statutory Framework That Includes NRS 106.240 Requires Tolling upon Notice of Pending Litigation

The statutory framework that includes NRS 106.240 expressly addresses notices of pending litigation, such as the lis pendens filed here, and the statute's text and structure confirm NRS 106.240's inapplicability.  The legislation enacting NRS 106.240 was captioned "An Act to quiet title to real estate by defining when the lien of an attachment and mortgage *and the notice of the pendency of an action* expires."  *See* Stat. of Nev. (1917) at 41 (emphasis added).[4]  The section that directly follows NRS 106.240 states that "Notice of the pendency of any action"—including publicly recorded lis pendens—"shall not constitute notice or be of any force or effect *after the expiration of ten years from the time of the filing of such notice*."  *See* Stat. of Nev. (1917) at 41 (emphasis added). That provision remains in effect today.  *See* NRS 108.260.

A lis pendens confirms that a live dispute exists where "the title to [a] property is disputed." *LaSalle Bank N.A. v. Hammer Family 1994 Trust*, No. 59420, 2015 WL 1423421, at *1 (Nev. 2015) (unpublished disposition).  Thus, a lis pendens "cloud[s] title *before* a sale of property occurs *so that the claims of a party may be resolved ...*." *Coury v. Tran*, 895 P.2d 650, 653 (Nev. 1995) (emphasis changed).  By placing the pending-litigation provision *after* NRS 106.240, the Legislature manifested its intent that the pending-litigation provision would act as an *exception* to NRS 106.240, *i.e.*, that serving a quiet-title complaint or recording a lis pendens in relation to a deed of trust preserves the deed of trust until either the matter is resolved or the ten-year period for doing so expires, whichever is later.  Holding otherwise could place the two provisions in conflict in situations like those here, where a lis pendens relating to a deed of trust could not have any continuing "force or effect" if the underlying deed of trust was terminated mid-litigation.

"When two statutory provisions conflict," Nevada law compels courts to "harmonize conflicting provisions so that the act as a whole is given effect."  *State v. Eighth Jud. Dist. Ct. (Logan D.)*, 306 P.3d 369, 380 (Nev. 2013) (citations omitted).  Read together, the full statute provides that deeds of trust ordinarily terminate ten years after the debt becomes "wholly due,"

---

[4]    "The title of a statute may be considered in determining legislative intent." *Coast Hotels & Casinos, Inc. v. Nevada State Labor Comm'n*, 34 P.3d 546, 551 (Nev. 2001).

except that notices of pending litigation regarding the deed of trust forestall that outcome while they remain valid and effective, until ten years after their issuance. Thus, the lis pendens filed here automatically tolled NRS 106.240's 10-year time limit.

      **iii.**     **Equitable Considerations Require Tolling NRS 106.240's Ten-Year Time Period During the First Lawsuit**

      In any event, because no one could reasonably have doubted Freddie Mac's or CitiMortgage's intention to enforce the Deed of Trust once the First Lawsuit concluded, given the positions taken during that litigation, the ten-year time period under NRS 106.240 was equitably tolled throughout that case. Indeed, a Nevada state district court recently concluded that courts "may take equitable considerations into account to determine whether the 10-year period set forth in NRS 106.240 was tolled by the [p]rior [q]uiet [t]itle [a]ction." Order Denying Mot. for Prelim. Inj. and Dissolving TRO, *TRP Fund VI, LLC v. Quality Loan Serv. Corp.*, No. A-22-848493-C (Nev. Dist. Ct. Mar. 10, 2022), *appeal filed*, No. 84407 (Nev. Mar. 21, 2022).

      NRS 106.240's application is not automatic and can be precluded by equitable considerations. In *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074 (Nev. 2001), the Nevada Supreme Court found that, while the ten-year period under NRS 106.240 had unquestionably passed, the statute did not automatically terminate the lien. *See id.* at 1079. Instead, the court remanded the case for further proceedings on whether an equitable consideration—there, estoppel—precluded that result. *Id.* Had equitable considerations been off limits, there would have been no basis for remand. *Feenstra* is consistent with a long line of decisions holding that Nevada courts retain the power to fashion equitable remedies in cases involving real property. *See, e.g.*, *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1111 (Nev. 2016). *Feenstra*, *Shadow Wood*, and cases like them confirm that equitable considerations can trump NRS 106.240's application. Because equitable tolling is a form of estoppel, the *Feenstra* decision applies directly here. *See, e.g.*, *Ramirez-Carlo v. United States*, 496 F.3d 41, 49 (1st Cir. 2007) ("the Supreme Court [has] treated equitable estoppel as a form of equitable tolling") (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)); *NGA #2 LLC v. Rains*, 946 P.2d 163, 168–69 (Nev. 1997) ("The doctrine of '[e]quitable estoppel operates to prevent a party from asserting legal rights that, in equity and good conscience, they

1  should not be allowed to assert because of their conduct.'") (quoting *Nevada State Bank v. Jamison*

2  *Partnership*, 801 P.2d 1377, 1382 (Nev. 1990)).  Accordingly, the Court should consider the equities

3  in deciding whether the NRS 106.240 ten-year time period was tolled during the First Lawsuit.

4       Here, the equities clearly favor CitiMortgage, which diligently litigated its rights and the

5  rights of the Loan owner—Freddie Mac—and successfully defeated a prolonged quiet-title challenge

6  brought by Twinrock's predecessor-in-interest.  Tolling the ten-year period is also equitable to the

7  public at large, as tolling under these circumstances advances the public interest in clear and reliable

8  land records.  The land records relating to the Property contain the HOA-issued Notice of Default

9  and Election to Sell Under Notice of Delinquent Assessment Lien (attached as Exhibit E), the Order

10  Discharging Debtors (attached as Exhibit F) the Notice of Default (attached as Exhibit G), the

11  Rescission (Ex. D), the HOA-recorded Notice of Foreclosure Sale (attached as Exhibit H), the

12  assignment of the Deed of Trust to CITI (attached as Exhibit I), the Trustee's Deed Upon Sale

13  (attached as Exhibit J) a notice of Default and Election to Sell Under Deed of Trust (attached as

14  Exhibit K), and a Notice of Trustee's Sale (attached as Exhibit L).  No one could plausibly infer

15  from those records that the debt secured by the Deed of Trust had been satisfied, abandoned, or

16  forgotten.  Holding that the ten-year time period under NRS 106.240 continues to run under these

17  circumstances would introduce confusion and uncertainty, not clarity.

18       Indeed, adopting Twinrock's position would undermine years of work by this Court, other

19  courts within this District, the Ninth Circuit, and Nevada state courts in resolving the substantial

20  volume of litigation regarding the effect of HOA foreclosures on properties secured by deeds of trust

21  owned by the Enterprises.  *E.g.*, *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017); *Daisy Tr. v.*

22  *Wells Fargo Bank, N.A.*, 445 P.3d 846 (2019).  Those decisions confirm that the Federal Foreclosure

23  Bar preserves deeds of trust that Nevada HOA foreclosures may otherwise extinguish, and the clarity

24  the decisions provide has streamlined and reduced burdensome litigation in Nevada courts.

25  Applying NRS 106.240 to terminate the Deed of Trust here would usher in a wave of new

26  litigation—a wave that already appears to be forming around ancient lien arguments—seeking to

27  effectively re-litigate and erase those results.  The public interest favors resolving title disputes

28  efficiently, not creating incentives for parties like Twinrock to prolong them.

1   Finally, Twinrock's suggestion that equitable tolling is unavailable because NRS 106.240

2   may be a statute of repose, Dkt. No. 14 ¶ 84, is incorrect on the merits.  The Nevada Supreme

3   Court's decision in *Feenstra* demonstrates that equitable considerations can preclude application of

4   NRS 106.240 in appropriate circumstances.  *Feenstra* comports with other states' equitable

5   exceptions to statutes of repose; federal courts recognize and apply such exceptions routinely.  *See,*

6   *e.g.*, *McCullough v. World Wrestling Ent., Inc.*, 172 F. Supp. 3d 528, 551–55 (D. Conn. 2016)

7   (tolling statute of repose under "continuing course of conduct" doctrine).

8   Accordingly, if the Court holds that NRS 106.240 applies here, it should fashion an equitable

9   remedy to preclude application of the statute.

10   **3.      NRS 106.240's Ten-Year Time Period Was Never Triggered**

11   Aside from the Rescission and the equities, Twinrock's claim fails for a more fundamental

12   reason:  The ten-year time period was never triggered. This Court has already resolved this question

13   in the context of Twinrock's motion for TRO and the Court should rule likewise here. *See* Dkt. No.

14   12.

15   Twinrock contends that Borrowers' last payment was made in July 2009, that Freddie Mac's

16   servicer (or its predecessor) accelerated the debt then secured by the Deed of Trust and that such

17   acceleration would have necessarily rendered the Loan "wholly due" under NRS 106.240.  *See* Dkt.

18   No. 14 ¶ 66.  Twinrock identifies two events that it suggests may have triggered the NRS 106.240

19   time-period:  unspecified correspondence or events leading up to the recordation of a Notice of

20   Default on October 27, 2010, and the July 6, 2010 discharge of the obligations under the note in a

21   bankruptcy proceeding.  *Id.* ¶ 14-16.  Twinrock is incorrect as a matter of law.

22   **i.      Neither the Notice of Default Nor any Event Preceding the Notice of Default Triggered NRS 106.240's Ten-Year Time-Period**

23

24   While neither the Nevada Legislature nor the Nevada Supreme Court has defined "wholly

25   due" as the term is used in NRS 106.240, the only plausible reading of "wholly due" is the maturity

26   date stated in the relevant deed of trust, or a recorded written extension of that date.

27   *a.      Under NRS 106.240, Only Two Types of Instruments Can Make a Loan "Wholly Due" and Trigger the Ten-Year Time-Period*

28   The express terms of NRS 106.240 make only two types of instruments relevant in

13

4249407.1

determining when the obligation secured by a deed of trust becomes "wholly due" for purposes of triggering the statute's ten-year time period—(1) the recorded "deed of trust" itself, and (2) "any recorded extension thereof." *Id.* Indeed, the Ninth Circuit has recently held that an "unrecorded acceleration notice" cannot render a debt "wholly due" under NRS 106.240. *Daisy Tr. v. Fannie Mae*, 2022 WL 874634, at *2.

The Nevada Legislature is obviously aware of notices of default, given its comprehensive regulation of their form and content, and the process by which they are issued and recorded. *See* NRS 107.080 (requiring a trustee to record a notice of default prior to initiating power of sale); NRS 107.087 (providing requirements for content, recording, and posting of notices of default). Had the Legislature intended notices of default, or any related events or correspondence, to trigger the ten-year time period under NRS 106.240, it would have inserted a reference to such documents when enacting NRS 107.080 or 107.087, or even when amending 106.240. It did not.

"[T]he 'doctrine of expressio unius est exclusio alterius as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) (citation omitted). "The maxim 'Expressio Unius Est Exclusio Alterius,' the expression of one thing is the exclusion of another, has been repeatedly confirmed in [Nevada's jurisprudence]." *Galloway v. Truesdell*, 422 P.2d 237, 246 (Nev. 1967). NRS 106.240's references to "deeds of trust" and "recorded extensions" setting the date a loan becomes "wholly due" for purposes of triggering the ten-year time period thus precludes other documents, such as notices of default, from doing so.

### b.  NRS 106.240's Statutory History Confirms the Point

CitiMortgage's reading comports with the statutory history of NRS 106.240.[5]  NRS 106.240 has changed little since it was enacted in 1917. It was amended in 1965 to include additional documents (deeds of trust and recorded extensions) as potential triggers. Had the Legislature

---

[5]  "Statutory history" refers to the evolution of a statutory scheme as evidenced by its actual, *enacted* provisions, in contrast to "legislative history" which refers to *unenacted* material like floor statements and committee reports. *See, e.g., Chhetri v. United States*, 823 F.3d 577, 587 n.13 (11th Cir. 2016) (differentiating statutory history from legislative history).

intended to add notices of default or related events or correspondence to the list, it could easily have done so then or at some time thereafter.  Indeed, although the Legislature made sweeping changes to its foreclosure laws after the 2008 housing crisis—particularly regarding the type and form of notice required to be given to borrowers—NRS 106.240 remained unchanged.  This history refutes any contention that the Nevada Legislature intended for other documents, such as notices of default and related correspondence, to trigger NRS 106.240.

> c.   *Twinrock's Arguments Cannot Be Squared with NRS 106.240's Plain Language*

Twinrock assumes that *any* acceleration triggers NRS 106.240's ten-year time-period.  *See, e.g.*, Dkt. No. 14 ¶ 66.  That is not what the statute says.  Moreover, Nevada law makes recording the notice of default a *precondition* to acceleration—NRS 107.080 mandates that acceleration cannot occur until 35 days *after* the *recorded* notice of default is mailed to the borrower.  *See* NRS 107.080(3)(a); *SFR v. U.S. Bank*, 2022 WL 1051628; *Glass*, 2020 WL 3604042, at *1; *Daisy Tr. v. Fannie Mae*, 2022 WL 874634, at *2.  Therefore, a notice of default cannot somehow make a previous acceleration effective by simply reciting or referring to a previous acceleration—and neither the Notice of Default nor any event or correspondence preceding the Notice of Default triggered NRS 106.240—as any purported acceleration that took place before recordation of the Notice of Default would have been premature and therefore void under Nevada law.

> d.   *The Notice of Default Could Not Render the Debt "Wholly Due" Because the Deed of Trust Contained a Reinstatement Clause*

Even if the Notice of Default could have accelerated the Loan, it still could not make the Loan "wholly due" within the meaning of NRS 106.240 because the Borrowers retained the right to reinstate the Loan under the Deed of Trust by making a partial payment of only the amount then-owed, and not the entire unpaid debt.  *See* Dkt. No. 4-1, Ex. A.

An obligation that becomes fully due cannot be satisfied or altered by partial, rather than complete, performance.  See generally Effect of Performance as Discharge and of Non-Performance as Breach, Restatement (Second) of Contracts § 235 (updated Oct. 2019).  Thus, for a loan to become "wholly due" as the term is commonly used, payment in full must be a borrower's only non-breaching option.  But here, even after the occurrence of some unspecified event purportedly accelerated the debt

and the Notice of Default recorded, Borrowers retained the option to pay "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred."  See Dkt No. 4-1, Ex. A (emphasis added).  As a practical matter, the only time that all amounts owed are certain and therefore "wholly due" is at maturity, not following an acceleration.  *See Annen v. Bank of Am.*, No. 1:16-cv-00641-SCJ-AJB, 2016 WL 11569314, at *4 (N.D. Ga. Nov. 25, 2016), report and recommendation adopted, 2016 WL 11569313 (N.D. Ga. Dec. 19, 2016).

### ii.   The Bankruptcy Discharge Did Not Trigger the NRS 106.240 Time-Period

Twinrock's alternative contention that the Borrowers' bankruptcy discharge made the Loan "wholly due" for purposes of NRS 106.240 also fails.  *See* Dkt. No. 14 ¶ 66.  As noted above in Section A(3)(i), NRS 106.240 recognizes only the maturity date set forth in a recorded deed of trust or a recorded extension of a deed of trust as a date on which the Loan becomes "wholly due."  But regardless, Twinrock's argument that the Borrower's bankruptcy discharge made the Loan "wholly due" fails, for at least three reasons.

*First*, the NRS 106.240 time-period begins only when the Loan becomes wholly due "according to the terms" of the deed of trust.  A bankruptcy discharge, even if assumed to make the Loan wholly due, operates according to bankruptcy law, not "according to the terms" of the deed of trust.  The argument that the bankruptcy discharge takes effect "according to the terms" of the deed of trust would obliterate the distinction between the *intrinsic* terms of the contract and the *extrinsic* law that applies regardless of the contract's terms.  By enacting the statutory phrase "according to the terms thereof," the Legislature plainly intended to *exclude*, not include, matters extrinsic to the deed of trust, such as the operation of generally applicable law.

Indeed, that issue has already been decided by at least one federal district court.  *See Ramanathan*, No. 2:19-cv-02009, 2021 WL 4486320.  The plaintiff in *Ramanathan*, like Twinrock here, argued that "the debtors' discharge from bankruptcy … triggered the ten-year period under 106.240 …."  *Id*. at *2.  The district court rejected that argument, holding that "[f]or the debt to become wholly due within § 106.240's meaning, it must be 'according to the terms thereof.'"  *Id*. at *4.  The court explained that this means "the debt must be wholly due by the terms of the original

4249407.1

maturity date or because the lender has accelerated the debt according to the terms of the parties'

agreement." *Id.* The court held that neither had happened, explaining that "although the bankruptcy

discharge relieved the debtors of personal liability on the debt, *that happened by operation of the*

*bankruptcy proceeding, not by the lender's option to accelerate under the terms of the note and deed*

*of trust.*" *Id.* (emphasis added). The same is true here: Even if the bankruptcy discharge is assumed

to have made the debt wholly due, it did not do so "under the terms thereof," and therefore cannot

have triggered the NRS 106.240 time-period.

     *Second*, even if bankruptcy law were assumed to be incorporated into the deed of trust, the

bankruptcy discharge did not make the Loan "wholly due." A bankruptcy discharge *excuses* the

borrower from its obligation to make further payments and *precludes* the lender from enforcing the

borrower's personal credit obligation; it does not render the Loan "wholly due." *See* 11 U.S.C.

§ 524. Twinrock's argument, ultimately, is that a legal mechanism that *negates* an obligation

simultaneously makes it "*wholly due;*" that makes no sense. As the Bankruptcy Court has explained,

a "Chapter 7 discharge relieve[s] the Debtor of his personal liability for his prebankruptcy debts, but

[does] not affect the [corresponding] liens." *In re Mirchou*, 588 B.R. 555, 571 (D. Nev. Bankr.

2018).

     *Third*, the case upon which Twinrock relies is inapplicable and has been effectively

abrogated. Twinrock points the Court to an unpublished Ninth Circuit decision that Twinrock says

holds that a "bankruptcy discharge has the effect of making the discharge date the actual maturity

date of the debt." Am. Compl. ¶ 84 (citing *Jarvis v. Federal Nat'l Mortg. Ass'n*, 726 F. App'x. 666

(9th Cir. 2018) (unpublished)). Twinrock misreads the decision, which holds that because a

bankruptcy discharge eliminated a borrower's liability for future installment payments, the last

installment date before the discharge triggered Washington's statute of limitations for enforcing the

obligation. The Ninth Circuit specifically cited a Washington decision holding that "the statute of

limitations runs against each installment from the time it becomes due," and reasoned that because

no payments were due after the discharge, the limitations period ran from the prior installment's due

date. *Jarvis*, 726 F. App'x at 666–67 (quoting *Edmundson v. Bank of Am.*, 378 P.3d 272, 276

(Wash. App. 2016)). The decision says nothing about the debt becoming "wholly due" or the

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

discharge date becoming "the actual maturity date," as Twinrock mistakenly contends.  *See* Am Compl. ¶ 84. Nor does the district court decision in the case support Twinrock.  It is true that the district court states that a bankruptcy "discharge of a borrower's personal liability on his loan—the cessation of his installment obligations—is the analog to a note's maturation" for statute-of-limitations purposes.  *Jarvis v. Federal Nat'l Mortg. Ass'n*, No. 16-cv-5194, 2017 WL 1438040, at *3 (W.D. Wash. April 24, 2017).  But that is because "[i]n both cases, no more payments could become due," not because the Loan has been accelerated or payment of the outstanding balance has otherwise become due.  *Id.*  Indeed, contrary to Twinrock's argument, the district court recognized that a bankruptcy discharge does *not itself* authorize "the creditor to require [the borrower] to pay in full immediately."  *Id.*

Moreover, the Washington Court of Appeals has since rejected *Jarvis*'s interpretation of Washington law.  *See Copper Creek (Marysville) Homeowners Ass'n v. Kurtz*, No. 82083-4-I, 2022 WL 152492, at *7 (Wash. Ct. App. Jan. 18, 2022).  In *Copper Creek*, the Washington Court of Appeals concluded that federal courts' interpretation of *Edmundson* as announcing a new rule that a bankruptcy discharge begins the clock on the statute of limitations governing foreclosure is "error" and that that is "not the law in Washington."  *Id.*

Even if the Washington Court of Appeals had not clarified state law on the issue, the *Edmundson* and *Jarvis* decisions are of limited persuasive value, as they are both at odds with the weight of authority on this issue.  *See, e.g., Diaz v. BBVA ISA*, No. 2 CA-CV 2021-0046, 2022 WL 71832, at * (Ariz. Ct. App. Jan. 7, 2022) (finding that discharge of debt in bankruptcy is not equivalent of maturation of debt and "while the [borrowers] received relief of their personal obligation to [lender] when their debt was discharged in bankruptcy, the deed of trust they executed to secure that personal obligation was not extinguished"); *Wilmington Sav. Fund Soc'y, FSB v. Fernandez*, 62 Misc. 3d 622, 625 (N.Y Sup. Ct. 2018), *aff'd,* 179 A.D.3d 79 (2019) ("[O]ther jurisdictions have encountered a similar factual scenario and have held that a discharge in bankruptcy does not accelerate the debt"); *Kabler v. HSBC Bank USA, Nat. Ass'n*, No. 16-cv-07138, 2018 WL 1384551, at *5 (Kan. Dist. Ct. Mar. 16, 2018) ("[borrower's] bankruptcy protects [borrower] against personal liability, but it did not accelerate or extinguish the lien under the law");

18

1    *Bank of N.Y. Mellon v. Holmes*, No. A-1-CA-38114, 2021 WL 2557793, at *3 (N.M. Ct. App. June

2    22, 2021) ("Borrower's discharge did not trigger the accrual of time to file for foreclosure under the

3    statute of limitations").

4         The law and common sense are in accord.  A bankruptcy discharge excuses the borrower

5    from paying but leaves an obligation partially unmet; it does not make the obligation "wholly due."

6    **B.    Twinrock's Wrongful Foreclosure claim premised on violations of NRS 107 ignores the**
        **plain text of the statute and must be dismissed.**

7

8         Twinrock's First Claim For Relief asserts that the foreclosure sale violated NRS Chapter 107

9    because (a) NDSC was the only entity that could have executed the required affidavit of authority,

10   (b) the person that signed the affidavit of authority did not have personal knowledge of the matters

11   stated in the affidavit and (c) NRS 107 requires the trustee (NDSC), and not any other entity, to

12   perform the investigation of facts to be included in the affidavit of authority. (Dkt. #14 ¶¶ 44-46.)

13   Twinrocks' arguments ignore the actual text of NRS 107 and the contents of the Affidavit of

14   Authority. The relevant language of the statute regarding the affidavit of sale provides as follows:

15        the power of sale for a residential foreclosure is subject to the following requirements
          and conditions and must not be executed until:

16             … The beneficiary, the successor in interest of the beneficiary or the
               trustee first executes and causes to be recorded . . . a notarized
17             affidavit of authority to exercise the power of sale.

18   NRS 107.0805. Beneficiary is defined as

19             the beneficiary of the deed of trust or the successor in interest of the
               beneficiary or any person designated or authorized to act on behalf of
20             the beneficiary or its successor in interest.

21   NRS 107.015. This language makes clear that the affidavit can be executed by a beneficiary, trustee,

22   or any person authorized to act on behalf of the beneficiary. Twinrock's claim that only the trustee

23   could investigate or sign the Affidavit of Authority flatly ignores the plain words of NRS 107.015.

24        The Affidavit is compliant with Chapter 107. Lauren Benning, Vice President of Document

25   Execution for Cenlar FSB, the sub-servicer of the Loan, executed the Affidavit of Authority. The

26   Affidavit states that Cenlar was authorized to execute the Affidavit by CitiMortgage and, contrary to

27   Twinrock's contention, is based on the personal knowledge of Ms. Benning. Ex. K at p. 5 ¶¶ 1-2.

28   Twinrock's wrongful foreclosure claim based on an erroneous reading of NRS 107 must be

19

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

dismissed.

**C.     Twinrock's claim for wrongful foreclosure based on CitiMortgage not possessing the Promissory Note must be dismissed.**

Twinrock's Second Claim for Relief is premised on CitiMortgage not possessing the Promissory Note. (Dkt. No. 14 ¶ 54.) Twinrock's argument should be rejected for three reasons.

First, Twinrock's claim does not allege that CitiMortgage does not possess the Promissory Note or authority to foreclose. Twinrock instead alleges only that it is demanding to see proof of possession of the original Promissory Note. Twinrock does not identify another party claiming an interest in the Promissory Note or and does not make a specific allegation regarding the Promissory Note. This request for information is not a cause of action and is not specific and plausible claim for relief that can withstand dismissal under *Iqbal* and *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Second, Twinrock's Second Claim for Relief is based on a demonstrably incorrect factual premise. Twinrock claims that

> "[t]he affidavit provided in this case does not identify the holder of the not nor is there any confirmation of actual possession of the note, it merely raises several competing possibilities of who the holder of the note could be."

(Dkt. No. 14 ¶ 50). This is contradicted by the Affidavit of Authority itself, which provides that CitiMortgage is the current holder of the Promissory Note and current beneficiary of record of the Deed of Trust. *See* Ex. K. The Affidavit of Authority also states that CitiMortgage "is in actual or constructive possession of the note secured by the Deed of Trust" or "is entitled to enforce the obligation or debt secured by the Deed of Trust." *Id.* The Affidavit makes clear that CitiMortgage is entitled to enforce the deed of Trust. Citimortgage does not allege a specific competing possibility as to who the holder of the note could be.

Third, and critically, Twinrock does not contend that CitiMortgage does not have the right to enforce the Promissory Note.  The Nevada Supreme Court explained in *Montierth* that where the record beneficiary of the deed of trust has contractual authority to foreclose on the note owner's behalf, the note owner maintains a property interest in the collateral.  *See In re Montierth*, 131 Nev. 543, 547-548 (2015). The Court concluded that the owner/servicer relationship ensured that

20

4249407.1

foreclosing lender remained a "secured creditor" with a "fully-secured, first priority deed" that could be enforced.  *Id.* at 650-51. A "person entitled to enforce" a note may be a "holder" of the note or even a "nonholder in possession of the [note] who has the rights of the holder." NRS 104.3301. Accordingly, "the status of holder merely pertains to one who may enforce the debt and is a separate concept from that of ownership." *Thomas v. BAC Home Loans Servicing, LP*, No. 56587, 2011 WL 6743044, at *3 n.9 (Nev. Dec. 20, 2011).  That is because "[o]wnership rights in instruments may be determined by principles of the law of property . . . which do not depend upon whether the instrument was transferred."  UCC § 3-203 cmt. 1.  For that reason, a transfer of a note has no bearing on ownership, but instead "vests in the transferee any right of the transferor to enforce the instrument."  NRS 104.3203.

The First Lawsuit established that Freddie Mac owned the Promissory Note and CitiMortgage acted as Freddie Mac's contractually authorized loan servicer. *CitiMortgage, Inc. v. Premier One Holdings, Inc.*, No. 77290-COA, 2020 WL 2071050, at *1-2 (Nev. Ct. App. Apr. 28, 2020). Twinrock does not identify any facts or make any allegations that indicate the relationship between Freddie Mac and its loan servicer, CitiMortgage, was anything other than the typical owner/servicer relationship.  The Nevada Supreme Court and other courts have repeatedly recognized the loan owner/servicer relationship. *See Daisy Tr. v. Wells Fargo Bank, N.A.*, 445 P.3d 846, 850 (Nev. 2019) (recognizing contractual relationship between Freddie Mac and its loan servicer); *In re Montierth*, 131 Nev. 543, 547-548 (2015); *Thomas v. BAC Home Loans Servicing, LP*, No. 56587, 2011 WL 6743044, at *1, 3 n.9 (Nev. Dec. 20, 2011) *CitiMortgage, Inc. v. SFR Invs. Pool 1, LLC*, 433 P.3d 262 (Nev. 2019); *Berezovsky v. Moniz*, 869 F.3d 923, 932-33 & n.8 (9th Cir. 2017). Accordingly, Twinrock's Second Claim for Relief falls well short of the mark necessary to assert a plausible claim for relief.

**D.   Twinrock's Wrongful Foreclosure claim premised on a split of the Note and Deed of Trust must be dismissed because the Note and Deed of Trust are not split—as confirmed in the First Lawsuit.**

Twinrock's Third Claim for Relief contests CitiMortgage's ability to foreclose on the Property, arguing that CitiMortgage "must have actual possession of the note along with the purported transfer of the deed of trust."  Dkt No. 14 ¶¶ 60; 57-64.  Twinrock contends that

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

w&w

CitiMortgage "lack[s] the requisite unity of interest" in the note and deed of trust.  *Id.* ¶ 62.  But Twinrock misunderstands Nevada law.  As litigated and decided in the First Lawsuit, the evidence demonstrated that Freddie Mac owns the Note and Deed of Trust, while CitiMortgage holds the Note and serves as beneficiary of record of the Deed of Trust in its capacity as Freddie Mac's contractually authorized servicer.  *CitiMortgage, Inc. v. Premier One Holdings, Inc*., No. 77290-COA, 2020 WL 2071050, at *1-2 (Nev. Ct. App. Apr. 28, 2020).  Under Nevada law, CitiMortgage is permitted to foreclose on the Property under such an arrangement.

In *In re Montierth*, 354 P.3d 648 (Nev. 2015), the Nevada Supreme Court addressed this precise fact pattern:  where the note owner is not the deed of trust's record beneficiary, but "there is either a principal agent relationship between [them], or the mortgage holder 'otherwise has authority to foreclose in the [note owner]'s behalf.'"  *Id.* at 651 (quoting Restatement § 5.4 cmts. c, e).  In those circumstances, any apparent split is rendered irrelevant by the relationship between note owner and deed of trust beneficiary, and foreclosure *is* permitted.  *Id.*  The Nevada Supreme Court has also confirmed that *Montierth* limits its holding in *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 254 (Nev. 2012), and "indicate[s] that Nevada disfavors an expansion of the *Edelstein* no-splitting rule" regarding notes and deeds of trusts.  *See West Sunset 2050 Trust v. Nationstar Mortgage,* 420 P.3d 1032, 1036 n.4 (Nev. 2018).

Consistent with *Montierth,* the Court of Appeals of Nevada has already confirmed in the First Lawsuit that Freddie Mac had a contractual relationship with CitiMortgage, the record beneficiary of the Deed of Trust at the time of the HOA Sale.  Nevada law thus confirms that Twinrock's arguments regarding the "lack of unity" of the note and deed of trust have no bearing on CitiMortgage's ability to foreclose on the Property.

Twinrock's suggestion that an Affidavit of Authority to Exercise the Power of Sale ("Affidavit of Authority") calls into question CitiMortgage's possession of the Note is of no moment.  Dkt. No. 14 ¶ 61.  The Affidavit of Authority was executed by Lauren Benning, Vice President of Document Execution at Cenlar FSB, "on behalf of CitiMortgage."  Ex. K at p. 4.  Paragraphs four and seven of the Affidavit of Authority are *not* contradictory—as Twinrock claims.  Dkt. No. 14 ¶ 61.  The Affidavit of Authority clearly states that CitiMortgage is "the current holder

22

of the note secured by the Deed of Trust," and that CitiMortgage, as the beneficiary of the Deed of Trust "is in actual or constructive possession of the note."  Ex. K ¶¶ 4, 7.

**E.**     **The Unjust Enrichment Claim must be dismissed because the Amended Complaint has not identified wrongful or unjust conduct by CitiMortgage and does not plausibly allege excess proceeds are available.**

For Twinrock to prevail on its Sixth Claim for Relief, unjust enrichment, it must prove the following three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof. *Takiguchi v. MRI Intern., Inc.*, 47 F. Supp. 3d 1100, 1119 (Nev. 2014). Twinrock asserts that CitiMortgage has been unjustly enriched through foreclosing and that Twinrock is entitled to the alleged excess proceeds of the foreclosure. The Amended Complaint does not state a plausible claim for unjust enrichment.

First, the Amended Complaint does not describe or demonstrate how Twinrock conferred a benefit on CitiMortgage. CitiMortgage authorized a trustee sale pursuant to the terms of the Deed of Trust. There was nothing unjust or improper about CitiMortgage's foreclosure and Twinrock did not convey a benefit to CitiMortgage.

Second, the Amended Complaint improperly asserts that there were excess proceeds resulting from the foreclosure sale based on a statement in the Borrowers' bankruptcy petition. A borrower's unaudited statement regarding the balance of a loan does not conclusively establish the Loan balance. And, indeed, the evidence presented by Twinrock strongly suggests that there are no excess proceeds. The 12/10/21 Notice of Trustee sale states that $365,218.62 is the total mount necessary to release the Deed of Trust. Other than the meritless assertion about the Borrower's bankruptcy filing, Twinrock does not assert any basis to challenge this amount or allege that it is incorrect. The purchase price at the March 4, 2022 foreclosure sale was $369,000, leaving possible excess proceeds of $3,781.38. (Dkt. #14 ¶ 40.) However, Twinrock filed this action in early 2022 and CitiMortgage has incurred much more than $3,781.38 in connection with its efforts to preserve its security as

23

4249407.1

1    permitted by the Deed of Trust.[6] Given the instant litigation that Twinrock has commenced, it is

2    simply not plausible that there would be any excess proceeds from the foreclosure sale.

3    **F.      The Amended Complaint fails to state a valid or plausible claim for Civil Conspiracy.**

4            Twinrock's Seventh Claim for Relief is civil conspiracy between CitiMortgage and NDSC.

5    Civil conspiracy requires the existence of an underlying tort. *Flowers v. Carville*, 266 F.Supp.2d

6    1245, 1249 (2003), *see also* C.J.S. CONSPIRACY § 8 (2006). In addition to attaching to an

7    underlying tort, a proper claim for civil conspiracy must establish the following elements: (1)

8    defendants acted in concert; (2) defendants intended to accomplish an unlawful objective for the

9    purpose of harming plaintiff; and (3) plaintiff sustained damage resulting from the defendants' acts.

10   *See Consol. Generator–Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304, 1311 (Nev.1999).

11   In civil conspiracy actions, the complaint must allege facts such as a "specific time, place, or person

12   involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a

13   conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th

14   Cir.2008).

15           Here, Twinrock has not alleged sufficient facts of any illegal agreement among CitiMortgage

16   and NDSC. Additionally, Twinrock does not identify an unlawful objective or a legally supported

17   basis for damages.  Twinrock relies entirely on its contention that the Deed of Trust was invalid

18   (Dkt. No. 14 ¶¶ 106-108), but none of Twinrock's theories of invalidity are supported by any

19   established Nevada Law. The Nevada Supreme Court has not expressly agreed with any of

20   Twinrock's legal contentions in this case. Twinrock cannot assert unique or novel (but ultimately

21   meritless) legal theories and simultaneously allege that Defendants knew all along that their conduct

22   violated the law. The Civil Conspiracy claim must be dismissed.

23   ///

24   ///

25   ///

26   ///

27

28   [6] The Deed of Trust permits attorney's fees and other fees incurred to protect and preserve the Deed of Trust to be added to the Loan balance. *See* Ex. A §§ 4, 9.

**V.**

**CONCLUSION**

Twinrock's Amended Complaint does not allege facts that would entitle it to the relief requested. The Deed of Trust was not extinguished by NRS 106.240. The various authorities that Twinrock relies on for this claim have been rejected by the Nevada Supreme Court and the Washington Court of Appeals. Twinrock is not an innocent purchaser because the Lis Pendens, which had not been released when Twinrock purchased the Property, placed Twinrock on constructive notice of the appeal, which ultimately resolved in favor of CitiMortgage. Twinrock's various Wrongful Foreclosure, Unjust Enrichment, and Civil Conspiracy claims are not factually plausible and not legally well-founded. The Court should dismiss Twinrock's Complaint.

DATED:  May 31, 2022                                  WOLFE & WYMAN LLP


                                                     By:   /s/ David Blake
                                                          DAVID T. BLAKE, ESQ. (#11059)

25

4249407.1

<u>**CERTIFICATE OF ELECTRONIC SERVICE**</u>

On May 31, 2022, I served **CITIMORTGAGE INC.'S MOTION TO DISMISS AMENDED COMPLAINT** by the following means to the persons as listed below:

     _X_       a.      ECF System (you must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary):

     _____       b.      United States Mail, postage fully pre-paid (List persons and addresses. Attach additional paper if necessary):

John Henry Wright, Esq.
The Wright Law Group, P.C.
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102
Counsel for Plaintiff Twinrock Holdings, LLC

Krista J. Nielson, Esq.
Nevada Bar no. 10698
Tiffany & Bosco, P.A.
10100 W. Charleston Blvd., Ste. 220
Las Vegas, Nevada 89135
Counsel for Defendant National
Default Servicing Corporation

_/s/ Evelyn M. Pastor_
Evelyn M. Pastor
An employee of WOLFE & WYMAN LLP

26

4249407.1