UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Twinrock Holdings, LLC, <br><br>      Plaintiff <br>v. <br><br>CitiMortgage, Inc., et al., <br><br>      Defendants | Case No.: 2:22-cv-00143-JAD-VCF <br><br>**Order Granting Motions to Dismiss and Closing Case** <br><br>[ECF Nos. 26, 27, 28] |

This case is a remnant of Nevada's foreclosure crisis in which real estate investors snapped up homes for pennies on the dollar after the owners defaulted on their homeowner-association (HOA) assessments. Plaintiff Twinrock Holdings, LLC's predecessor in interest did just that in November 2012 when it purchased the home at 7313 Hospitality Place in Las Vegas for $4,100 at an HOA foreclosure sale. The home had been purchased several years earlier with a $180,000 loan secured by a deed of trust. After years of state-court litigation, it was determined that the deed of trust survived the HOA foreclosure sale and still encumbered the property.

But when CitiMortgage, Inc., the purported holder of that note, took steps to foreclose on that long-unpaid mortgage last year, Twinrock filed this second-generation quiet-title action and moved to enjoin the foreclosure. Twinrock primarily theorizes that the deed of trust was extinguished by operation of Nevada's ancient-lien statute, Nevada Revised Statute (NRS) 106.240, rendering it now unenforceable. I found Twinrock's legal theory meritless and denied injunctive relief.[1] The foreclosure sale went forward, the property was bought by Breckenridge Property Fund 2016, LLC for $369,000, and Twinrock amended its complaint to add a quiet-title

---

[1] ECF No. 12.

claim against this new purchaser and claims against CitiMortgage for wrongful foreclosure, unjust enrichment, and civil conspiracy.[2]

CitiMortgage[3] and Breckenridge now move to dismiss this suit, and Twinrock countermoves for summary judgment in its favor. Because I find that Twinrock has not stated—and cannot plead—a plausible claim based on its theories under Nevada law, I grant the motions to dismiss, deny the motion for summary judgment as moot, and close this case.

## Discussion

**I. Twinrock's debt-acceleration and good-faith-purchaser theories are meritless, compelling dismissal of its fourth through seventh claims for relief.**

Twinrock's fourth through seventh claims for relief are all based on the theory that the mortgage that was secured by the deed of trust (upon which CitiMortgage foreclosed in March 2022) was unenforceable at the time of the foreclosure sale because that debt had been extinguished by operation of NRS 106.240, which "provides a means by which liens on real property are automatically cleared from the public records after a certain period of time."[4] This statute conclusively presumes that a lien is extinguished ten years after the debt it secures

---

[2] ECF No. 14. Although Twinrock also sued the foreclosure agent, National Default Servicing Corporation, it has since stipulated to dismiss all claims against this defendant. *See* ECF No. 24.

[3] Twinrock also argues that CitiMortgage's motion should be denied "because it was already denied by the Court." ECF No. 31 at 7. This characterization is misleading. The court denied the motion to dismiss because Twinrock was permitted to file its amended complaint after that motion was filed. ECF No. 25. The motion was denied not on its merits but because the court perceived that it had been rendered moot by the subsequent filing of the amended complaint. To the extent that the motion should not have been denied because it addressed the amended complaint before that pleading hit this docket, the error was the court's, not CitiMortgage's, and the court will not fault CitiMortgage for that hiccup. I find that the filing of CitiMortgage's instant motion to dismiss [ECF No. 28] was proper in light of the unusual procedural history of this case, and I now consider it on its merits.

[4] *SFR Invs. Pool 1, LLC v. U.S. Bank N.A. ("Gotera")*, 507 P.3d 194, 195 (Nev. 2022).

becomes "wholly due."[5] Twinrock theorizes that this mortgage was accelerated and became wholly due, starting NRS 106.240's ten-year clock ticking, by at least one of two events: (1) the original borrowers' bankruptcy discharge in July 2010,[6] and (2) when they stopped making mortgage payments in August 1, 2009, prompting the lender to accelerate the debt.[7] CitiMortgage and Breckenridge move to dismiss these claims, arguing primarily that NRS 106.240 does not work the way that Twinrock claims; neither the loan default in August 2009 nor the bankruptcy proceedings accelerated the debt; and, regardless, the debt was decelerated by a timely rescission.[8]

### A. The original borrowers' bankruptcy discharge did not accelerate the debt.

Twinrock alleges that the original borrowers' bankruptcy proceedings altered the maturity date of the mortgage because their bankruptcy discharge on July 6, 2010, caused the debt to be "deemed matured."[9] It grounds this theory in authority interpreting Washington's statute of limitations for foreclosure actions.[10] That Washington statute is materially distinguishable from NRS 106.240 in both language and effect. And although a Ninth Circuit panel concluded in an unpublished disposition in *Jarvis v. Federal National Mortgage Association* that a bankruptcy discharge triggers Washington's statute of limitations for judicial-

---

[5] Nev. Rev. Stat. § 106.240.
[6] ECF No. 14 at 11.
[7] *Id*. at 10.
[8] ECF No. 28 (CitiMortgage's motion to dismiss); ECF No. 26 (Breckenridge's motion to dismiss, "adopt[ing] by reference the arguments and factual history" in CitiMortgage's briefs).
[9] *Id*. at 11.
[10] *Id*. (citing *Jarvis v. Fed. Nat'l Mortg. Ass'n*, 726 F. App'x 666, 667 (9th Cir. 2018)).

3

foreclosure actions,[11] the Court of Appeals of Washington in *Copper Creek Homeowners Association v. Kurtz* recently denounced that interpretation as "erroneous" and one "arrived at . . . through its misinterpretation" of Washington state precedent.[12]  It explained that "[s]uch a rule would attribute to a bankruptcy discharge of the debtor more than relief from personal liability.  It would mean the option of the lender to accelerate or not to accelerate the maturity date of the note was eliminated."[13]  "Such a rule only exists in the inferences drawn and stated in the federal decisions[,]" the *Copper Creek* court noted, which "do not rely on any provision in the bankruptcy code as requiring such a result.  We can find no bankruptcy provision that would do so."[14]  I heed the Washington court's warning that *Jarvis* is dubious authority, so I decline to apply it.

Moreover, nothing in the deed of trust suggests that a bankruptcy discharge could automatically accelerate this debt,[15] and paragraph 22 of that document contains detailed requirements for triggering acceleration, including a notice that does not appear to have been provided in conjunction with the bankruptcy discharge here.[16]  To find that a bankruptcy discharge automatically accelerates a discharged debt would be an unwarranted exception to the

---

[11] *Jarvis v. Fed. Nat'l Mortg. Ass'n*, 726 F. App'x 666, 667 (9th Cir. 2018) (citing *Edmundson v. Bank of Am.*, 378 P.3d 272, 276 (Wash. Ct. App. 2016)).

[12] *Copper Creek (Marysville) Homeowners Ass'n v. Kurtz*, 508 P.3d 179, 190 (Wash. Ct. App. 2022).

[13] *Id*.

[14] *Id*.

[15] *See generally* ECF No. 28-1 (deed of trust).

[16] *Id*. at 13. See also Ramanathan as Tr. of Ramanathan Fam. Tr. v. Bank of New York Mellon, 2021 WL 4486320 at *4 (D. Nev. Sept. 30, 2021) (holding that "although a bankruptcy petition accelerates debts for purposes of a bankruptcy proceeding, it does not necessarily do so for purposes of § 106.240," and "[l]ikewise, although the bankruptcy discharge relieved the debtors of personal liability on the debt, that happened by operation of the bankruptcy proceeding, not by the lender's option to accelerate under the terms of the note and deed of trust").

4

Supreme Court of Nevada's recognition in *Clayton v. Gardner* that "courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention."[17] So I do not find that the original borrowers' bankruptcy discharge accelerated the debt and rendered it "wholly due," triggering NRS 106.240's ten-year clock.

**B.    At best, the debt was accelerated on October 27, 2010, but decelerated before NRS 106.240's presumption set in.**

Twinrock's theory that the debt was accelerated in August 2009 around the time of the original borrowers' default fails because this imagined acceleration could not trigger NRS 106.240. No notice was recorded at that time, nor does Twinrock allege that one was. As the Ninth Circuit held in a memorandum disposition in *Daisy Trust v. Federal National Mortgage Association*, an unrecorded notice cannot render a debt wholly due for purposes of the statute because NRS 107.080 requires a notice of default to be recorded to be effective.[18] "Acceleration," the panel explained, "cannot occur until" the statutorily prescribed cure period expires, and "this period does not begin to run until the notice of default has been recorded."[19] The *Daisy Trust* opinion is consistent with the *Clayton* court's observation that "acceleration is seldom implied."[20] The only express notice of acceleration of this debt was the October 27,

---

[17] *Clayton v. Gardner*, 813 P.2d 997, 999 (Nev. 1991) (quoting *United States v. Feterl*, 849 F.2d 354, 357 (8th Cir. 1988)).

[18] *Daisy Tr. v. Fed. Nat'l Mortg. Ass'n*, 2022 WL 874634, at *2 (9th Cir., Mar. 24, 2022) (citing NRS 107.080 and noting that "Nevada law requires a notice of default to be recorded"). I find this unpublished disposition persuasive and follow it.

[19] *Id*.

[20] *Clayton*, 813 P.2d at 999 (quoting *Feterl*, 849 F.2d at 357).

5

2010, notice of default.[21]  So if any document set the NRS 106.240 ten-year clock in motion,[22] it was that one.

But that notice was canceled by the notice of rescission that was recorded on October 22, 2020,[23] and the Supreme Court of Nevada held in *SFR Investments Pool 1, LLC v. U.S. Bank* (known as the *Gotera* case) that rescissions like this decelerate a debt, preventing NRS 106.240 from extinguishing the deed of trust that secures it.[24]  Within the last week alone, the Court of Appeals for the Ninth Circuit has thrice affirmed the dismissal of NRS 106.240 claims based on *Gotera*.[25]  CitiMortgage's rescission here is an even more direct deceleration than the one in *Gotera*.  It explicitly states that "[t]he purpose of this document is to decelerate the subject loan until such time as the deed of trust beneficiary or its successors or assigns MAY ELECT to foreclose pursuant to the deed of trust."[26]  So even if the October 2010 acceleration triggered the ten-year period under this ancient-lien statute, the bank's rescission of that notice decelerated it in the nick of time.

### C. Twinrock's alleged good-faith-purchaser status cannot save its fifth claim for quiet title.

Twinrock's fifth claim for quiet title advances "an additional alternative" theory to NRS 106.240 that "the deed of trust is no longer valid because [Twinrock] is a Good Faith

---

[21] ECF No. 28-7.

[22] For purposes of this order, I assume without deciding that the acceleration of a debt renders it wholly due as contemplated by NRS 106.240.

[23] ECF No. 28-4 at 2 (rescission).

[24] *Gotera*, 507 P.3d at 197–98.

[25] *See Closson v. Bank of New York Mellon*, 2023 WL 385173, at *1 (9th Cir. Jan. 25, 2023); *Florendo v. Bank of New York Melon*, 2023 WL 387034, at *1 (9th Cir. Jan. 25, 2023); *Haus v. Bank of New York Mellon*, 2023 WL 195522, *1 (9th Cir., Jan. 17, 2022).

[26] ECF No. 28-4 at 3.

Purchaser."[27]  It contends that, because the state trial court had canceled the deed of trust, and it purchased this home after that ruling but before it was reversed on appeal, Twinrock bought the property free and clear of that encumbrance.[28]  Twinrock rests this argument mainly on the Nevada Supreme Court's recognition in *Cox v. Eighth Judicial District Court* that "judicial sales to bona fide purchasers generally are not subject to later challenge if an underlying judgment is reversed on appeal."[29]  But the instant case does not involve a judicial sale—the foreclosure sale it challenges was a non-judicial one—so *Cox* is inapposite.

      Even if I generously assume that Twinrock is merely using *Cox* for the proposition that a bona fide purchaser (bfp) has certain protections, Twinrock cannot claim that status.  "The bona fide doctrine" protects an innocent purchaser from "competing legal or equitable claims of which the purchaser had no notice at the time of the conveyance."[30]  Twinrock had notice.  CitiMortgage recorded a lis pendens against the property a year and a half before Twinrock bought it,[31] and it appears from the recorded documents that the lis pendens was still on the property at the time of Twinrock's purchase.[32]  As the Nevada Supreme Court has expressed, "[t]he doctrine of lis pendens provides constructive notice to the world that a dispute involving real property is ongoing."[33]  The lis pendens here put Twinrock on constructive notice that

---

[27] ECF No. 14 at 14.

[28] *Id*. at 15.

[29] *Id*. (citing *Cox v. Eighth Jud. Dist. Ct. of State*, 193 P.3d 530, 533 (Nev. 2008)).

[30] *25 Corp. v. Eisenman Chem. Co.*, 709 P.2d 164, 172 (Nev. 1985).

[31] ECF No. 28-2 (lis pendens recorded on 5/31/17).

[32] *See* ECF No. 28-3 (notice of release of lis pendens recorded on 5/28/20).

[33] *Weddell v. H2O, Inc.*, 271 P.3d 743, 751 (Nev. 2012).

CitiMortgage was continuing to litigate its position that the deed of trust remains an encumbrance on the property—a position that ultimately prevailed.

Twinrock insists that the lis pendens wasn't enough. "To protect its interest," CitiMortgage "was required to request a stay of the order/judgment and post a supercedes [sic] bond" during the appeal of the trial court's order canceling the deed of trust, and it didn't.[34] Twinrock argues that the Washington Court of Appeals rejected this the-lis-pendens-is-enough notion in *Spahi v. Hughes-Northwest, Inc.*, a decision that appears in a string cite in *Cox*.[35]

The *Spahi* court did no such thing. That case did not address the effect of a lis pendens on bfp status—the term "lis pendens" is nowhere in the decision. If anything, *Spahi* supports the conclusion that a lis pendens is enough because the court acknowledged that constructive notice precludes a purchaser from claiming bfp status, explaining, "[t]o have the protection of the bona fide purchaser doctrine, a third[-]party purchaser must be without constructive notice of another's claimed interest in real property."[36] Because Nevada law holds that a lis pendens is constructive notice of a claimed interest in property, Twinrock cannot state a quiet-title claim based on a bfp or good-faith-purchaser theory.

In sum, Twinrock cannot state a plausible claim for relief based on any of its NRS 106.240 theories. So I dismiss its fourth through seventh claims for relief with prejudice and without leave to amend.

---

[34] ECF No. 33 at 20 (citing *Spahi v. Hughes-Northwest, Inc*, 27 P.3d 1233 (Wash. Ct. App. 2001)) ("Here, CITI argues that the recording of a lis pendens was enough to put TWINROCK on notice of the potential reversal and therefore TWINROCK cannot be a good faith purchaser. However, this same argument was dismissed by the Washington Court of Appeals in *Spahi* . . .").

[35] *Id*. at 20–21.

[36] *Spahi*, 27 P.3d at 1236.

## II. Twinrock does not defend its remaining claims.

Twinrock's first through third claims are against CitiMortgage for wrongful foreclosure. Twinrock theorizes that (1) the foreclosure sale should be voided because the affidavit of authority to exercise the power of sale was prepared by the wrong entity, violating NRS 107.0805(2) (first claim for relief); and (2) CitiMortgage hasn't proven that it is in possession of the note, which it must do in order to foreclose (second and third claim for relief).[37] CitiMortgage moves to dismiss these claims, arguing that Twinrock's first claim is based on a misreading of NRS Chapter 107, and its remaining claims don't actually allege that CitiMortgage lacks possession of the note but rather that Twinrock "is demanding that the note actually be proven to be in" CitiMortgage's possession "and not floating somewhere else,"[38] which does not state a claim for relief.[39] Twinrock offers no response to these arguments in its opposition to CitiMortgage's motion. I construe this silence as Twinrock's concession to their merits and consent to grant the motion to dismiss these claims under Local Rule 7-2(d).[40] So I dismiss Twinrock's first through third claims for relief with prejudice, leaving no claims remaining.

## Conclusion

IT IS THEREFORE ORDERED that CitiMortgage Inc.'s and Breckenridge Property Fund 2016, LLC's motions to dismiss **[ECF Nos. 26, 28] are GRANTED**, and this action is dismissed with prejudice.

---

[37] ECF No. 14 at 7–10.

[38] *Id*. at 8.

[39] ECF No. 28 at 19–28.

[40] L.R. 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion."). Twinrock ignores these claims and theories in its own motion for summary judgement, too, despite asking for "summary judgment on all Causes of Action set forth in Plaintiff's Amended Complaint." ECF No. 27 at 17.

Case 2:22-cv-00143-JAD-VCF   Document 43   Filed 01/26/23   Page 10 of 10

IT IS FURTHER ORDERED that Twinrock Holdings, LLC's motion for summary judgment **[ECF No. 27] is DENIED** as moot.

**The Clerk of Court is directed to ENTER JUDGMENT** in favor of CitiMortgage, Inc. and Breckenridge Property Fund 2016, LLC, and against Twinrock Holdings, LLC, and **CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
January 26, 2023